JAMES F. DORROH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dorroh v. Commissioner
Docket No. 26482-91
United States Tax Court
T.C. Memo 1994-373; 1994 Tax Ct. Memo LEXIS 383; 68 T.C.M. (CCH) 337; August 8, 1994, Filed *383 Decision will be entered under Rule 155. For petitioner: Herman D. Baker. For respondent: John W. Sheffield III. SCOTT
SCOTT
MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioner's Federal income tax and additions to tax for the calendar years 1983 through 1988 in the amounts as follows: Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
1983
$ 4,126
$ 949
$ 206
1
1984
11,438
2,860
572
1
1985
13,670
3,361
684
1
1986
13,225
3,275
--
--
1987
10,527
2,579
--
--
1988
17,279
4,287
864
--
Additions to Tax
Sec.
Sec.
Sec.
Year
6653(a)(1)(A) 6653(a)(1)(B) 6654(a) 1983
--
--
$ 228
1984
--
--
718
1985
--
--
767
1986
$ 661
[1]
633
1987
526
[2]
551
1988
--
--
1,090
Some of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving for decision: (1) Whether certain payments petitioner received under Eastern Airlines retirement plans during the years 1983 through 1988 may *384 be excluded from petitioner's gross income pursuant to section 105(c) [1] as amounts received as disability payments in connection with his employment as an airline pilot; (2) whether petitioner is liable under section 6651(a)(1) for an addition to tax for failure to timely file a return for each of the years 1983 through 1988; (3) whether petitioner is liable for the additions to tax for negligence under section 6653(a)(1) and (2) for the years 1983, 1984, and 1985, under section 6653(a)(1)(A) and (B) for the years 1986 and 1987, and under section 6653(a)(1) for 1988; and (4) whether petitioner is liable for the addition to tax under section 6654(a) for each of the years here in issue. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. At the time he filed his petition in this case, petitioner *385 resided in Clayton, Georgia. Petitioner was employed as a pilot with Eastern Airlines, Inc. (Eastern), until sometime around December 1981. During petitioner's employment with Eastern, he participated in the Eastern Airlines Fixed Benefit Retirement Income Plan for Pilots (Plan A) and the Eastern Airlines Variable Benefit Retirement Plan For Pilots (Plan B). Plan A and Plan B are very similar plans. Plan A and Plan B are collectively referred to herein as the plans. Plan A provides for the payment of benefits to participants of Plan A upon the retirement of the participant or upon the participant's becoming permanently disabled. To fund Plan A, each month Eastern contributed an amount equal to the sum of the following amounts: (1) 2-1/4 percent of each participant's monthly compensation not in excess of $ 100; (2) 3-3/4 percent of the portion of the participant's monthly compensation in excess of $ 100 but not in excess of $ 250; and (3) 5-1/4 percent of the portion of the participant's monthly compensation in excess of $ 250. According to section 3.6(a) of Plan A, a participant is eligible to receive a benefit upon becoming permanently disabled before having attained the normal *386 retirement age. Permanent disability is defined in Plan A as: the complete inability of such Participant as a result of physical or mental reasons to continue in employment with Eastern as a Pilot, provided that such disability did not result from any of the causes enumerated * * * below: (i) Intentionally self-inflicted injuries, attempted suicide or any attempt thereat. (ii) Habitual use of narcotics or alcoholic beverages * * *. (iii) An Act of War where the Pilot is on military leave of absence.
The amount of a disability benefit for a participant who is disabled after August 1, 1981, shall equal the greater of either the participant's accrued benefit reduced by 3 percent for each year by which the date of the disability precedes the participant's 60th birthday or the actuarial equivalent of such accrued benefit. The calculation of the amount of a disability benefit of a participant that is disabled prior to August 1, 1981, is similar. Also, Plan A provides for minimum disability pension amounts. For a participant who has less than 2 years' active service, the minimum disability pension amount is 30 percent of the disability retirement earnings base. For a *387 participant who has 2 or more years of active service, the minimum disability pension amount is 30 percent of the disability retirement earnings base, plus 2-1/2 percent times the disability retirement earnings base times the number of years of active service over 2 years. Disability retirement earnings base is defined as the amount of the 12 consecutive months of highest compensation of a participant during the last 36 months of active service preceding the disability retirement date. Plan B also provides for the payment of benefits to participants of Plan B upon the retirement of the participant or upon the participant's becoming permanently disabled. To fund Plan B, Eastern contributed an amount equal to 11 percent of each participant's compensation. Each participant of Plan B could also elect to contribute up to 10 percent of his or her compensation. Under Plan B, each participant had an account in his or her name, to which the contributions were credited on behalf of that participant. According to section 3.5(a) of Plan B, a participant is eligible for payment of a benefit upon becoming permanently disabled before having attained the normal retirement age. Permanent disability *388 is defined in Plan B as: the complete inability of such Participant, as a result of physical or mental reasons, to continue in employment with Eastern as a Pilot, provided that such disability did not result from any of the causes enumerated * * * below: (i) Intentionally self-inflicted injuries, suicide or any attempt thereat. (ii) Habitual use of narcotics or alcoholic beverages. (iii) An act of war where a pilot is on military leave of absence.
All benefits are calculated upon the basis of payment in the form of a monthly modified single life annuity commencing on the effective retirement date. Sometime around December 1981, petitioner's employment at Eastern was terminated because of his arthritis. Petitioner was on sick leave for all of the time in 1981 that he was employed by Eastern. After petitioner was terminated at Eastern, he lost his first-class pilot's license. Three years later, petitioner received his second-class pilot's license, and that license remained current until sometime in 1991. At the time of the trial of this case, petitioner was not current on his flying time and also needed to pass a physical in order to be current for the second-class *389 pilot's license. Petitioner still has a driver's license and continues to drive. Petitioner drove from Clayton, Georgia, to Atlanta, Georgia, for the trial of this case, a distance of about 120 miles. Petitioner lives alone and does his own grocery shopping. Since being terminated by Eastern, the only work petitioner has done is repairs to houses petitioner was renovating. In the past, petitioner has enjoyed spending as much time as possible during the summers in North Carolina. Petitioner's aunt owned a home in North Carolina which was in bad shape. Sometime in the early 1980s, petitioner painted the outside of the house. Eventually, petitioner moved to North Carolina. Petitioner used a U-Haul van, which he drove, to move his personal items to North Carolina. Petitioner is involved with various activities in his community. Petitioner planned to set up the electrical wiring for a gem and mineral show some time after the trial of this case. Petitioner has never filed for Social Security disability payments. During 1983, petitioner did not receive any payments under Plan A. During 1984 through 1988, petitioner received $ 25,293 each year under Plan A. During 1983 through *390 1988, petitioner received the following payments under Plan B: Year
Payments
1983
$ 7,108
1984
7,890
1985
8,097
1986
9,754
1987
10,749
1988
11,002
Petitioner did not file a Federal income tax return for any of the calendar years 1983 through 1988. Petitioner's accountant lived in Miami, Florida, during the years here in issue. During part of this time petitioner lived in West Palm Beach, Florida. During 1983 through 1988, petitioner received the following amounts of dividends: Year
Dividends 1983
$ 5,550
1984
5,512
1985
4,769
1986
4,242
1987
2,842
1988
3,195
During 1983 through 1988, petitioner received the following amounts of interest income: Year
Interest Income 1983
$ 2,285
1984
1,485
1985
3,587
1986
935
1987
2,913
1988
2,857
Petitioner is entitled to the following exemptions, deductions, losses, or credits for the years indicated: Year
Description
Amount
1983
Dependant exemptions
$ 5,492
1983
Legal fees deduction
2,250
1983
Net rental loss deduction
469
1983
Net short term capital loss
3,000
1983
Withholding tax credit
330
1984
Medical care deduction
2,600
1984
Other itemized deductions
2,110
1984
Net rental loss deduction
351
1984
Net short term capital loss
2,410
1985
Itemized deductions
8,015
1985
Net rental loss deduction
2,203
1985
Foreign tax credit
124
1985
Withholding tax credit
225
1986
Itemized deductions
16,279
1986
Foreign tax credit
126
1987
Itemized deductions
5,018
1987
Foreign tax credit
97
1987
Withholding tax credit
106
1988
Itemized deductions
8,026
1988
Foreign tax credit
57
1988
Withholding tax credit
131
*391 Petitioner is entitled to two personal exemptions for each of the years 1983 and 1984, and is entitled to one personal exemption for each of the years 1985, 1986, 1987, and 1988. Petitioner is eligible for head of household filing status for each of the years 1983 and 1984, and single filing status for each of the years 1985, 1986, 1987, and 1988. Respondent in the notice of deficiency included in petitioner's income the amounts petitioner received from Plan A and Plan B for the years 1984 through 1988 and from Plan B in 1983. Petitioner contends such amounts are excluded from his income under section 105(c). Respondent disagrees, contending that the payments do not meet the requirement in section 105(c)(1) that petitioner have permanent loss of use of a member or function of the body, or of section 105(c)(2) as to method of computation of the amount of the payments. OPINION Gross income includes all income from whatever source derived, unless specifically excluded from income under the exclusion provisions of the Internal Revenue Code. Secs. 61, 101-136. Section 61 specifically lists "pensions" as a source of gross income. Sec. 61(a)(11); sec. 1.61-11, Income Tax Regs. *392 Pursuant to section 105, [2] amounts received by an employee under accident or health insurance funded by the employer are generally to be included in a taxpayer's income. However, section 105(c) permits the exclusion from gross income of payments from accident or health insurance if the following two requirements are met: (1) The payments are for the permanent loss or loss of use of a member or function of the body or permanent disfigurement, of the taxpayer, his spouse, or a dependent; and (2) the payments are computed with reference to the nature of the injury without regard to the period the employee is absent from work. Amounts received through an accident or health plan are generally equated with amounts received through accident or health insurance. Sec. 105(e)(1). *393 In order for the first requirement of section 105(c) to be satisfied, the payments received must constitute payment for one of the following: (1) The permanent loss or loss of use of a member of the body; (2) the permanent loss or loss of use of a function of the body; or (3) permanent disfigurement. Hines v. Commissioner, 72 T.C. 715, 718 (1979). The first category refers only to loss of extremities such as arms, legs, or fingers, while the third category refers only to external bodily appearance. Id. at 718-719. Therefore, the first and third categories are not applicable to the present case. The intent of Congress when it enacted section 105(c) was "to provide a tax benefit to one who receives a severe physical injury which permanently and significantly lessens the quality of life which he had enjoyed prior to the injury." Id. The regulations provide insight as to the injuries included in the first two categories. Section 1.105-3, Income Tax Regs., provides: For purposes of section 105(c), loss or loss of use of a member or function of the body includes the loss or loss of use of an appendage of the body, *394 the loss of an eye, the loss of substantially all of the vision of an eye, and the loss of substantially all of the hearing in one or both ears. * * *
We have held, for example, that the loss of muscle tissue of the heart caused by a heart attack does not constitute a loss of a member or of a bodily function. Hines v. Commissioner, supra. In that case, we noted that not every injury that permanently robs an individual of his principal means of livelihood qualifies for the section 105(c) exclusion. Id. at 719-720; see also Watts v. United States, 703 F.2d 346, 351-352 (9th Cir. 1983). Petitioner's arthritis problems do not constitute the loss of a member or a bodily function within the terms of the section 105(c) exclusion. As the evidence establishes, petitioner is able to perform many other activities and is still eligible to qualify to fly a private airplane. Therefore, petitioner is capable of selecting work which requires less strenuous demands than that which was required of him as a commercial airline pilot. The payments at issue also fail to satisfy the second requirement *395 of section 105(c). The following must be true in order to satisfy the second requirement: (1) The payments must be computed with regard to the nature of the injury, and (2) the payments must not be computed with regard to the period the employee is absent from work. Hines v. Commissioner, supra at 720. Where the benefits do not vary according to the type of injury and participants with different injuries receive the same benefit, then the second requirement is not met because the payments are not computed with reference to the nature of the injury. Beisler v. Commissioner, 814 F.2d 1304, 1308 (9th Cir. 1987), affg. T.C. Memo. 1985-25; Hines v. Commissioner, supra at 720; see also S. Rept. 1622, 83d Cong., 2d Sess. 183-184 (1954). In determining the amount of benefit paid a disabled participant, the plans under which petitioner received payments make no distinction between types of injuries. The payments received by petitioner under the plans were not predicated upon the type and severity of the injury suffered. Petitioner received benefits under the *396 plans because it was determined he was disabled within the definitions used in the plans. The amounts of the benefits petitioner received were determined by the length of time petitioner had been an employee of Eastern. The determining factor of the amount of the benefit paid to petitioner was the amount of petitioner's accrued benefit or contributions made on petitioner's behalf to the particular plan, and not the nature or extent of the injury. Therefore, the requirement in section 105(c)(2) has not been satisfied. Petitioner relies on two cases in support of his position that the benefits paid should be excluded from his income. The first case on which petitioner relies, Wood v. United States, 590 F.2d 321 (9th Cir. 1979), dealt with a taxpayer's receipt of a lump-sum payment from a profit-sharing plan upon his termination of employment due to disability. Originally, the Government argued that the lump-sum payment came from a profit-sharing plan and therefore was not from an accident or health plan. The District Court rejected this argument. The Court of Appeals for the Ninth Circuit in Wood stated: On appeal the government concedes *397 that the nonvested 15 percent of the payment was excludable from income as an amount received through an accident or health plan. Thus, the status of the plan as an accident or health plan under § 105 is not in dispute. The government contends, however, that the vested 85 percent was not a payment "for" disability, since this portion represented taxpayer's earned share of profit under a plan qualifying under § 401 and, as such, was taxable when received by him. [Id. at 323.]
The Court of Appeals held that the lump-sum payment could be excluded from the taxpayer's income under section 105(c) since the taxpayer's "entitlement to payment came as a result of disability pursuant to the company's accident or health plan." Id. at 323. The Court of Appeals in Wood did not discuss the section 105(c)(2) requirement. In a later opinion, decided en banc, the Court of Appeals stated that Wood did not adequately address section 105(c)(2) and the Wood opinion "evidently assumed, without explanation, that * * * [the section 105(c)(2)] requirements were met." Beisler v. Commissioner, supra at 1308. *398 Under the facts present in this case, we have held that the payments received from the plans did not meet the requirements of section 105(c)(1) and (2). Therefore, the facts of the present case are distinguishable from the facts present or assumed in the Wood case. If that case were interpreted as petitioner contends it should be, it would be contrary to our holding in Hines v. Commissioner, supra. Therefore, even if Wood were not distinguishable from the present case on the basis of petitioner's contention, we would not follow it, since we are not bound under Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), to follow Wood v. United States, supra, in this case, which would be appealable to the Court of Appeals for the Eleventh Circuit. It might be added that even in the Ninth CircuitWood is of dubious authority on this point given the later en banc decision in Beisler. The second case petitioner relies on is Masterson v. United States, 478 F. Supp. 454 (N.D. Ill. 1979). *399 That case also dealt with a lump-sum payment from a profit-sharing plan. In the Masterson case, the District Court for the Northern District of Illinois relied on the analysis in Wood in holding that the payment was properly excluded from income under section 105(c). The opinion in Masterson contains no discussion of the requirements of section 105(c)(1) or (2) in reaching the conclusion that the lump-sum distribution is "excludable from gross income because it represents compensation for disability." Id. at 456. The District Court in Masterson seemed to ignore the legislative scheme. Gordon v. Commissioner, 88 T.C. 630, 638 (1987) (citing Caplin v. United States, 718 F.2d 544, 547 (2d Cir. 1983)). As was true with respect to the Wood case, the facts of the present case are distinguishable from the facts assumed in Masterson. See Gibson v. United States, 643 F. Supp. 181 (W.D. Tenn. 1986); Christensen v. United States, 57 AFTR 2d 86-533, at 86-996, 86-1 USTC par. 9254, at 83,461 (D. Minn. 1986). *400 The next issue for decision is whether petitioner is liable for the section 6651(a)(1) addition to tax. Section 6651(a)(1) imposes an addition to tax for failure to timely file a return, unless the taxpayer establishes: (1) The failure did not result from willful neglect; and (2) the failure was due to reasonable cause. Willful neglect has been interpreted to mean a conscious, intentional failure, or reckless indifference. United States v. Boyle, 469 U.S. 241, 245-246 (1985). Reasonable cause requires the taxpayer to demonstrate that he exercised ordinary business care and prudence and was nonetheless unable to file a return within the prescribed time. Id. at 246; sec. 301.6651-1(c)(1), Proced. & Admin. Regs. In the present case, petitioner failed to file Federal income tax returns for the years 1983 through 1988. Petitioner argues that his reliance on Wood v. United States, 590 F.2d 321 (9th Cir. 1979), and Masterson v. United States, 478 F. Supp. 454 (N.D. Ill. 1979), was reasonable cause for his failure to file his returns. We disagree for several *401 reasons. First, there is no evidence that petitioner actually relied on these two cases. Secondly, even if he did rely on these two cases, such reliance was not reasonable since other cases which we have discussed above discussed the facts that distinguish petitioner's situation from the Wood case. Finally, as we have set forth in our facts, petitioner had sufficient income aside from the payments under his plans with Eastern to require the filing of a return whether or not a tax would be due. We, therefore, hold that petitioner is liable for the additions to tax under section 6651(a)(1). The next issue for decision is whether petitioner is liable for the addition to tax under section 6653(a). Section 6653(a) imposes an addition to tax for negligence or intentional disregard of rules or regulations. Negligence encompasses any failure to reasonably attempt to comply with the Internal Revenue Code, including the lack of due care or the failure to do what a reasonable or ordinarily prudent person would do in a similar situation. McGee v. Commissioner, 979 F.2d 66, 71 (5th Cir. 1992), affg. T.C. Memo. 1991-510; Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), *402 affg. in part and remanding in part 43 T.C. 168 (1964). Petitioner bears the burden of proving that he was not negligent. Rule 142(a); Patterson v. Commissioner, 740 F.2d 927, 930 (11th Cir. 1984), affg. T.C. Memo. 1983-655; Luman v. Commissioner, 79 T.C. 846, 860-861 (1982). Based on this record, we conclude that petitioner was negligent in his underpayment of tax, since he did not act reasonably or use due care in determining his Federal tax obligations. Therefore, petitioner is liable for additions to tax under section 6653(a)(1) and (2) for the years 1983, 1984, and 1985, under section 6653(a)(1)(A) and (B) for the years 1986 and 1987, and under section 6653(a)(1) for the year 1988. Petitioner has offered no evidence and made no argument in support of his position that he is not liable for the addition to tax under section 6654(a). We, therefore, sustain respondent's determination of this addition to tax. Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on the full deficiency.↩
2. 50 percent of the interest due on $ 10,430.↩
1. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. SEC. 105. AMOUNTS RECEIVED UNDER ACCIDENT AND HEALTH PLANS. (a) Amounts Attributable To Employer Contributions. -- Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer. * * * * (c) Payments Unrelated To Absence From Work. -- Gross income does not include amounts referred to in subsection (a) to the extent such amounts --
(1) constitute payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement, of the taxpayer, his spouse, or a dependent (as defined in section 152), and (2) are computed with reference to the nature of the injury without regard to the period the employee absent from work.
* * * * (e) Accident And Health Plans. -- For purposes of this section and section 104 -- (1) amounts received under an accident or health plan for employees, and (2) amounts received from a sickness and disability fund for employees maintained under the law of a State, or the District of Columbia,
shall be treated as amounts received through accident or health insurance.↩