T.C. Summary Opinion 2016-46

UNITED STATES TAX COURT

RICHARD G. BRADDOCK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 590-14S.                    Filed August 24, 2016.

<u>Peter G. McGrath</u>, for petitioner.

<u>Johnny Craig Young</u> and <u>Corey R. Clapper</u>, for respondent.

SUMMARY OPINION

LEYDEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1]All section references are to the Internal Revenue Code in effect for the
(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated December 2, 2013, respondent determined a deficiency of $9,981 and an accuracy-related penalty of $1,996 with respect to petitioner's 2011 Federal income tax. Respondent has conceded the accuracy-related penalty and agreed to allow petitioner a deduction for attorney's fees. As a result, the deficiency is decreased to $7,969.

After the concessions, the issues for decision are: (1) whether a settlement payment petitioner received is excludable from his gross income under section 105 or (2) in the alternative, whether the settlement payment is excludable from petitioner's gross income under section 104(a)(2).

Background

This case was submitted fully stipulated by the parties pursuant to Rule 122. The first stipulation of facts filed September 11, 2015, and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner resided in South Carolina.

_____

[1](...continued)
year 2011, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

At some point before 2009, petitioner was employed by Endress & Hauser. Petitioner was provided with long-term disability coverage through the Lincoln National Life Insurance Co. (Lincoln National). The stipulated record does not indicate who paid the long-term disability premiums.[2]

Petitioner submitted an "Affadvit [sic] of Petitioner Richard G. Braddock" with his simultaneous opening brief in which he attests: "In 2009 I was working for Endress & Houser [sic] and they payed [sic] money into my Lincoln National Life Insurance Company Policy for long term [sic] disability."

Petitioner does not assert that he paid the premiums for the long-term disability insurance. The record does not support any finding that petitioner paid the premiums for the long-term disability insurance.

During petitioner's employment with Endress & Hauser he was diagnosed with, among other things, a progressive musculoskeletal and neuromuscular syndrome, including progressive musculoskeletal pain. The pain was based on a combination of severe degenerative arthritis and neuromuscular disease.

---

[2]In a complaint petitioner filed with the U.S. District Court for the District of South Carolina, he stated: "Until 2009, Plaintiff was employed with Endress & Hauser and as an employee of Endress & Hauser, Plaintiff was provided with long term [sic] disability coverage via a plan which was fully insured by [Lincoln National]." The complaint does not indicate who paid the premiums for the long-term disability coverage.

Sometime in 2009 petitioner left Endress & Hauser. The record does not indicate why. Petitioner filed a claim for long-term disability benefits with Lincoln National. Lincoln National denied petitioner's claim.

Petitioner appealed the denial by Lincoln National and exhausted his administrative remedies. Lincoln National also denied the appeal and the subsequent requests for administrative remedies.

On October 8, 2010, petitioner filed a complaint against Lincoln National in the U.S. District Court for the District of South Carolina, Charleston Division. In the complaint, petitioner sought long-term disability benefits under an ERISA plan pursuant to 29 U.S.C. sec. 1132(a)(1)(B). Lincoln National did not file an answer to petitioner's complaint.

In the complaint petitioner requested long-term disability benefits and attorney's fees and costs.[3] The only mention of petitioner's condition is the following: "[Petitioner] became disabled because of certain problems from which he suffered." Petitioner alleged in the complaint that he was "forced to cease working and * * * [I] filed a claim for long term [sic] disability benefits."

---

[3]Respondent is allowing petitioner a deduction for attorney's fees related to settlement of the complaint.

On January 4, 2011, petitioner signed a Settlement and Release (agreement) with Lincoln National. Under the agreement petitioner accepted $45,000 as a settlement payment in consideration for settling his case and releasing Lincoln National generally. The agreement did not reference petitioner's health problems. The agreement required petitioner to do whatever was necessary to see that the suit was dismissed immediately with prejudice.

The agreement specifically provided, in pertinent part, as follows:

## SETTLEMENT AND RELEASE

THIS SETTLEMENT AND RELEASE ("Agreement") is entered into as of January 4, 2011 by Richard Braddock ("Plaintiff") in favor of The Lincoln National Life Insurance Company ("LNL").

WHEREAS, Plaintiff instituted an action in the United States District Court for the District of South Carolina, Charleston Division, (the "Lawsuit") seeking damages therein relating to the denial of long term [sic] disability benefits; and

*     *     *     *     *     *     *

WHEREAS, without admitting any liability, the parties wish now to amicably resolve all disputes between them so as to avoid the expense and uncertainty of litigation;

*     *     *     *     *     *     *

1.     Payment. LNL has agreed to make payment to Plaintiff and his counsel in the sum of $45,000, to be paid within 10 days of LNL's receipt of this document executed by Plaintiff.

2.    Release.  Plaintiff hereby releases, acquits and forever discharges LNL * * * of and from any and all manner of actions, causes of action, debts, accounts, promises, variances, damages, claims and demands whatsoever, in law or in equity, that Plaintiff may now have against [LNL] for, upon or by reason of any matter, cause or issue arising out of or related in any way to the subject matter of the Lawsuit referenced above, including, but not limited to, any and all claims for insurance or ERISA benefits, costs, attorneys fees, interest, extracontractual damages or bad faith, and any and all other claims or actions of any kind.  Plaintiff hereby agrees that he has no further group insurance coverage (whether disability or life) issued by LNL and no basis for any further claims against [LNL]. Plaintiff further agrees that he will never apply for, and never attempt to obtain insurance coverage, including, but not limited to, individual or group disability insurance, from any of the following insurers: The Lincoln National Life Insurance Company or The Lincoln Life and Annuity Company of New York or any of the affiliated Lincoln National companies.

In addition, LNL hereby releases, acquits and forever discharges [Plaintiff] from any alleged claim, lien, or cause of action related to reimbursement, subrogation, and/or recovery of overpayment of benefits or other income whether in law or in equity, arising out of the Lawsuit or the Policy.  LNL forever releases and discharges [Plaintiff] from any and all claims, whether in law, or in equity, it has or may have relating to the Policy and any claims that were or could have been raised regarding the Lawsuit.

3.    Dismissal of Lawsuit.  Following Plaintiff's receipt of the payment referenced in paragraph 1 hereof, Plaintiff shall promptly execute and file with the court a Stipulation for Dismissal With Prejudice or equivalent pleading with respect to the Lawsuit, forward a copy of the same to LNL's counsel, and do any and all other things necessary to see that the Lawsuit is dismissed immediately with prejudice.

*    *    *    *    *    *    *

6.    Tax Obligations.  Plaintiff agrees that he is solely responsible for any tax payment obligations that may arise as a consequence of the settlement.  Plaintiff also acknowledges that none of the Releasees or their respective attorneys has offered the Plaintiff any tax advice with respect to the tax aspects of any portion of this settlement or any other matters.  Plaintiff agrees not to seek or to make any claim against any of the Releasees for any loss, cost, damage or expense if a claim or adverse determination is made in connection with the non-withholding or the tax treatment of any of the proceeds of this settlement or any portion thereof.  Plaintiff understands and agrees that none of the Releasees have any duty to defend against any claim or assertion in connection with the non-withholding or the tax treatment of the proceeds of this settlement or any portion thereof, and Plaintiff agrees to assume full responsibility for defending against any such claim or assertion.

The agreement was signed by petitioner and his counsel.[4]

The settlement payment was reported to the IRS through a 2011 Form W-2, Wage and Tax Statement, as "Wages, Tips and Other Compensation".  Petitioner timely filed his Federal income tax return, Form 1040, U.S. Individual Income Tax Return, for the taxable year 2011.  Petitioner did not report the $45,000 settlement payment on his 2011 tax return.

The IRS mailed petitioner a notice of deficiency for the 2011 taxable year dated December 2, 2013.  Respondent determined an increase in petitioner's

---

[4]The agreement, which was included as an exhibit to the first stipulation, does not contain a signature of a representative for Lincoln National.  The parties have not raised the lack of a signature by Lincoln National as affecting the validity of the agreement.  The Court assumes, without finding, that the agreement was binding on both petitioner and Lincoln National.

income by the $45,000 of unreported wage income. Respondent also determined an increase in the amount of taxable Social Security income as a result of the increase in petitioner's income.

### Discussion

Generally, determinations made in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); see INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Under certain circumstances the burden of proof with respect to relevant factual issues may shift to the Commissioner under section 7491(a). Petitioner has neither alleged that section 7491(a) applies nor established his compliance with the requirements of section 7491(a)(2)(A) and (B) to substantiate items, maintain records, and cooperate fully with respondent's reasonable requests. Therefore, the burden does not shift to respondent under section 7491(a). See Higbee v. Commissioner, 116 T.C. 438, 442-443 (2001).

1. Settlement Agreement Payment Includable as Gross Income Under Section 61(a)

The term "income" as used in the Internal Revenue Code means income from any source, including any accretion to the taxpayer's wealth. See sec. 61(a);

Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955). The settlement payment is includable in petitioner's income under section 61(a) unless petitioner proves that an exclusion applies.

Certain accretions to a taxpayer's wealth are, by statute, made excludable from the taxpayer's income, but those statutory exclusions are narrowly construed. See, e.g., O'Gilvie v. United States, 519 U.S. 79 (1996); Commissioner v. Schleier, 515 U.S. 323, 328 (1995). Petitioner asserts that the settlement payment of $45,000 is excludable from his gross income on the following grounds: (1) the settlement payment is excludable from his gross income under section 105(c) or (2) in the alternative, the settlement payment is excludable from his gross income under section 104(a) (2).

2.      Exclusion From Income Under Section 105

Section 105 governs amounts received under accident and health plans. See Dzioba v. Commissioner, T.C. Memo. 1989-203. While the statutory framework is admittedly confusing, section 105 works as follows. First, section 105(a) provides a more specific rule than the general income inclusion rule under section 61 for when amounts received by an employee through an accident or health

insurance plan will be included in gross income.[5]  If a payment meets the

requirements of section 105(a) and, therefore, is includable in gross income, a

taxpayer may be able to exclude it from gross income if the requirements of

section 105(c) are met.

Petitioner asserts that the settlement payment is excludable from his gross

income for 2011 because it meets the requirements of section 105(a) and qualifies

for the exclusion under section 105(c).  However, for reasons explained below, the

Court determines that petitioner has not proven that the settlement payment meets

the requirement of section 105.

a.  Section 105(a)

Section 105(a) provides as follows:

> SEC. 105(a).  Amounts Attributable to Employer Contri-butions.-- Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer.

Petitioner bears the burden of proving that the contributions to the disability

insurance plan were attributable to contributions by his employer that were not

---

[5]The Court assumes, without deciding, that the settlement payment constitutes an amount received by an employee through accident or health insurance for purposes of sec. 105(a).

included in his gross income or were paid by his employer. Petitioner has not proven that his employer paid the disability insurance premiums and/or that his employer made contributions to the disability insurance plan and those contributions were not included in his income.

The stipulations filed by the parties do not address who paid the contributions to the disability insurance plan. Petitioner filed an affidavit with his opening brief in which he attests: "In 2009 I was working for Endress & Houser [sic] and they payed [sic] money into my Lincoln National Life Insurance Company Policy for long term [sic] disability."

Section 7463 generally allows disputes in small tax cases to be decided in proceedings in which the normally applicable procedural and evidentiary rules are relaxed. For example, Rule 174(b) provides: "Trials of small tax cases will be conducted as informally as possible consistent with orderly procedure, and any evidence deemed by the Court to have probative value shall be admissible." In this case, however, the parties agreed to submit the case fully stipulated under Rule 122. The affidavit attached to petitioner's opening brief was not part of the stipulated record. Further, the Court does not find the assertion to be probative as it appears to be based solely on petitioner's recollection and is not supported by anything in the stipulated record. Thus, because petitioner has failed to sustain his

burden of proof, the Court concludes that the settlement payment does not meet the requirements of section 105(a).

b.  Section 105(c)

Petitioner has not met his burden of proof as to the requirements of section 105(a).  Accordingly, the Court need not consider whether the settlement payment is excludable under section 105(c).  However, because petitioner has premised much of his case on an exclusion under section 105(c), the Court addresses his assertions.

Payments that are includable in income under section 105(a) may nevertheless be excludable from income under section 105(c) if they meet two requirements.  Under section 105(c)(1) the payments must be made for the permanent loss of a member or function of the body, or the permanent disfigurement of the taxpayer.  Under section 105(c)(2) the payments must be computed with reference to the nature of the injury and without regard to the period the employee is absent from work.  If either requirement is not met, the income is not excludable under section 105(c).  For reasons discussed below, the Court determines that petitioner has not proven that the settlement payment is excludable under section 105(c)(1) and thus is not excludable under section 105(c).

The intent of Congress in enacting section 105(c) was to "provide a tax benefit to one who receives a severe physical injury which permanently and significantly lessens the quality of life which he had enjoyed prior to the injury." Hines v. Commissioner, 72 T.C. 715, 718-719 (1979).

We have long held that insurance payments for injuries qualifying the payments for exclusion from gross income under section 105(c)(1) must fall into one of three categories: (1) payments for the permanent loss or loss of use of a member of the body; (2) payments for the permanent loss or loss of use of a function of the body; or (3) payments for permanent disfigurement. Id.; Green v. Commissioner, T.C. Memo. 2008-130, 2008 Tax Ct. Memo LEXIS 133, at *35, aff'd, 322 F. App'x 412 (5th Cir. 2009). Petitioner does not argue that his injuries constitute a permanent loss or loss of a member of his body or that they constitute permanent disfigurement. Rather, petitioner argues that his injuries constitute the permanent loss of use of a function of his body.

The Court has held that a loss of a function exists if it leaves a taxpayer "effectively without the use of his hands, legs, and feet, as opposed to whether his use is partially impaired." Stolte v. Commissioner, T.C. Memo. 1999-271, 1999 Tax Ct. Memo LEXIS 311, at *10 (peripheral nerve damage in hands, legs and feet caused by chemotherapy was loss of function where the condition led to

atrophy of the muscles and permanent nerve damage); cf. Dorroh v. Commissioner, T.C. Memo. 1994-373, 1994 Tax Ct. Memo LEXIS 383, at \*12 (arthritis that prevented a pilot from flying a commercial airplane not a loss of bodily function because taxpayer still able to perform many other activities and still eligible to fly a private airplane), aff'd without published opinion, 74 F.3d 1255 (11th Cir. 1996).

Petitioner was diagnosed with a progressive musculoskeletal and neuromuscular syndrome, including progressive musculoskeletal pain, which is a combination of severe degenerative arthritis and neuromuscular disease.   While petitioner attests in his brief that his injuries "include paralysis, chronic cramping, and chronic pain", he has not provided proof of those assertions or that the settlement payment was for the permanent loss of his arms, legs, or feet or a function of such.

Petitioner has failed to prove that his injuries satisfy the requirements of section 105(c)(1).  Therefore, the Court concludes that petitioner has not met his burden of proving that the settlement payment is excluded from income under section 105(c).

3.      Exclusion From Income Under Section 104(a)(2)

Section 104(a)(2) allows for the exclusion from a taxpayer's income of "the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or periodic payments) on account of personal physical injuries of physical sickness".  See, e.g., Espinoza v. Commissioner, 636 F.3d 747, 749-750 (5th Cir. 2011), aff'g T.C. Memo. 2010-53; sec. 1.104-1(c), Income Tax Regs.  In O'Gilvie, 519 U.S. at 83, the Supreme Court read the phrase "on account of" to require a "strong[] causal connection", thereby making section 104(a)(2) "applicable only to those personal injury lawsuit damages that were awarded by reason of, or because of, the personal injuries." See also Murphy v. IRS, 493 F.3d 170, 175 (D.C. Cir. 2007).  The Supreme Court specifically rejected a "but for" formulation in favor of a "stronger causal connection".  O'Gilvie, 519 U.S. at 82-83.

The relief petitioner sought in his complaint was strongly causally connected with the denial by Lincoln National of his claim for long-term disability payments.  Petitioner's action against Lincoln National filed in the U.S. District Court was based on the cause of action under 29 U.S.C. sec. 1132(a)(1)(B).  That statute allows a person who is a beneficiary of or participant in a plan covered by ERISA to bring an action "to recover benefits due him under the terms of his plan,

to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan". Id. Essentially, this section allows a person who participates in or benefits from a plan (including disability insurance) that is subject to ERISA to bring a civil action to enforce the participant's or beneficiary's rights under the plan. Such rights may include payment of benefits. See Corsini v. United Healthcare Corp., 51 F. Supp. 2d 103, 106 (D.R.I. 1999).

In filing a complaint under 29 U.S.C. sec. 1132(a)(1)(B) petitioner was seeking to recover benefits he claimed Lincoln National owed him under the long-term disability insurance plan. The lawsuit was not in the nature of a claim for recovery for physical injuries or physical sickness.

When a taxpayer receives a payment under a settlement agreement, as is the case here, the nature of the claim that was the actual basis for settlement guides the Court's decision whether the payment is excludable from income under section 104(a)(2). See United States v. Burke, 504 U.S. 229, 237 (1992); Simpson v. Commissioner, 141 T.C. 331, 339-340 (2013); Molina v. Commissioner, T.C. Memo. 2013-226, at *10. Thus, whether the settlement agreement payment is excludable from gross income depends on the nature and character of the claims asserted and not upon the validity of those claims. Bent v. Commissioner, 87 T.C. 236, 244 (1986), aff'd, 835 F.2d 67 (3d Cir. 1987); Church v. Commissioner, 80

T.C. 1104, 1105-1106 (1983); <u>Kees v. Commissioner</u>, T.C. Memo. 1999-41, 1999 Tax Ct. Memo LEXIS 38, at *11. The Court looks to the specific claims for which the settlement was paid. <u>Bagley v. Commissioner</u>, 105 T.C. 396, 406 (1995), <u>aff'd</u>, 121 F.3d 393 (8th Cir. 1997); <u>Kees v. Commissioner</u>, 1999 Tax Ct. Memo LEXIS 38, at *11 (citing <u>Allen v. Commissioner</u>, T.C. Memo. 1998-406).

Whether the settlement is achieved through a judgment or by a compromise agreement, the question to be asked is: "In lieu of what were the damages awarded?". <u>Raytheon Prod. Corp. v. Commissioner</u>, 144 F.2d. 110, 113 (1st Cir. 1944), <u>aff'g</u> 1 T.C. 952 (1943); <u>Fono v. Commissioner</u>, 79 T.C. 680, 692 (1982), <u>aff'd without published opinion</u>, 749 F.2d 37 (9th Cir. 1984). To prove that the settlement payment is excluded from income under section 104(a)(2), petitioner must show that his settlement payment was in lieu of damages for physical injuries or physical sickness. <u>See</u> <u>Green v. Commissioner</u>, 507 F.3d 857, 867 (5th Cir. 2007), <u>aff'g</u> T.C. Memo. 2005-250; <u>Ahmed v. Commissioner</u>, T.C. Memo. 2011-295, 2011 Tax Ct. Memo LEXIS 291, at *7, <u>aff'd</u>, 498 F. App'x 919 (11th Cir. 2012).[6] The determination of the nature of the underlying claim is factual. <u>Bagley</u>

_____

[6]<u>See</u> <u>Espinoza v. Commissioner</u>, T.C. Memo. 2010-53, <u>aff'd</u>, 636 F.3d 747 (5th Cir. 2011); <u>Save v. Commissioner</u>, T.C. Memo. 2009-209, 2009 Tax Ct. Memo LEXIS 211, at *5 n.5 (stating that although cases were decided under sec. 104(a)(2) before it was amended in 1996, their holding regarding the

(continued...)

v. Commissioner, 105 T.C. at 406; Robinson v. Commissioner, 102 T.C. 116, 126 (1994), aff'd in part, rev'd in part, and remanded on another issue, 70 F.3d 34 (5th Cir. 1995).

Ultimately, the character of the payment hinges on the payor's dominant reason for making the payment. Green v. Commissioner, 507 F.3d at 868. The Court looks first to the language of the agreement itself for indicia of purpose. Id. at 867; Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), aff'g T.C. Memo. 1964-33; Robinson v. Commissioner, 102 T.C. at 126. If the agreement lacks express language stating what the amount paid pursuant to the agreement was to settle or is otherwise not clear, the Court looks to the intent of the payor, considering all of the facts and circumstances. Knuckles v. Commissioner, 349 F.2d at 613; Robinson v. Commissioner, 102 T.C. at 127; Ahmed v. Commissioner, 2011 Tax Ct. Memo LEXIS 291, at *7-*8; Kees v. Commissioner, 1999 Tax Ct. Memo LEXIS 38, at *11. Where the agreement does not mention its purpose, the Court may look at other facts that reveal the payor's intent, such as the amount paid and the factual circumstances that led to the agreement. Green v. Commissioner, 507 F.3d at 868. Although the belief of the payee is relevant to

_____

[6](...continued)
characterization of settlement proceeds in lieu of damages remains good law).

that inquiry, the character of the payment hinges ultimately on the dominant reason of the payor in making the payment. Agar v. Commissioner, 290 F.2d 283, 284 (2d Cir. 1961), aff'g per curiam T.C. Memo. 1960-21; Fono v. Commissioner, 79 T.C. at 696.

Petitioner asserts that the intent of the payor, Lincoln National, was to avoid the expense and uncertainty of litigation and to settle in lieu of paying damages at trial. Even assuming that was the intent of Lincoln National, the damages which it hoped to avoid were not damages due to physical injuries or physical sickness of petitioner. The damages were for nonpayment of disability insurance payments. The complaint expressly stated that petitioner "seeks long term [sic] disability benefits" and makes only passing reference to "certain problems from which he suffered". It did not identify petitioner's physical injuries or physical sickness.

Neither the complaint nor the agreement shows that the $45,000 settlement payment was made on account of physical injuries or physical sickness. The record shows that the payor's intent was to satisfy petitioner's claim for long-term disability benefits. Section 104(a)(2) does not allow the settlement income to be excluded from petitioner's income.[7]

---

[7]The parties have not raised whether the agreement payment is excludable under sec. 104(a)(3). Sec. 104(a)(3) excludes amounts received through accident

(continued...)

For reasons discussed herein, the Court concludes that petitioner's settlement payment does not qualify for exclusion from gross income under either section 105(c) or section 104(a)(2). Respondent properly determined that petitioner's settlement payment is gross income under section 61(a).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.

---

[7](...continued)
or health insurance for personal injuries or sickness if the taxpayer paid for the insurance or the amounts were attributable to contributions by the taxpayer's employer that were includable in the taxpayer's gross income. Sec. 104(a)(3); <u>Hayden v. Commissioner</u>, T.C. Memo. 2003-184, <u>aff'd</u>, 127 F. App'x 975 (9th Cir. 2005). As the Court has determined, petitioner has not proven that the disability insurance premiums were paid by his employer. Petitioner has not asserted that the premiums were attributable to contributions by his employer that were taxable to him or that he paid the premiums. Accordingly, sec. 104(a)(3) does not provide a basis for exclusion of the settlement payment.