JON W. COLTON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Colton v. Commissioner
Docket No. 19197-93
United States Tax Court
T.C. Memo 1995-275; 1995 Tax Ct. Memo LEXIS 274; 69 T.C.M. (CCH) 2956; June 21, 1995, Filed *274 Decision will be entered under Rule 155 as to the deficiency in tax and for petitioner as to the addition to tax under section 6651(a) for 1990. Jon W. Colton, pro se. For respondent: Eric Swenson. DINAN
DINAN
MEMORANDUM OPINION DINAN, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1] Respondent determined a deficiency in petitioner's 1990 Federal income tax in the amount of $ 2,089 and an addition to tax under section 6651(a) in the amount of $ 659. After concessions by respondent, [2] the issues for decision are: (1) Whether 63.9 percent of petitioner's long-term disability benefit payments are excluded from gross income pursuant to section 105(c); and (2) whether petitioner is liable for an addition to tax under section 6651(a)(1) for failure *275 to file a timely return. Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference. Petitioner resided in Escondido, California, on the date the petition was filed in this case. Petitioner's 1990 return was not timely filed. On June 8, 1985, petitioner was shopping for a new automobile at the Porsche-Audi Dealership in San Diego, California. Petitioner was examining a Porsche automobile's engine, when the sales person stepped out from behind the controls of the car. The car lurched forward, struck petitioner across his chest, and pinned him against the wall. As a result of the accident, petitioner visited various doctors. On May 17, 1994, an orthopedic surgeon, Dr. Rollin E. Webber, prepared an evaluation report of petitioner (the report). Dr. Webber was not a witness *276 before the Court. Dr. Webber's diagnosis contained in the report indicated petitioner suffered from a "(1) Cervical sprain, healed; (2) Thoracic sprain, healed; (3) Lumbosacral sprain, healed; (4) A psychophysiologic musculoskeletal reaction, secondary to the injury of June 8, 1985; (5) Cognitive deficiency in Logical memory loss manifested as 'acquired traumatic brain syndrome'; (6) Exogenous depression". The report described petitioner as having "pain in [his] neck and LEFT shoulder with associated mid-back pain and recurring intermittent headaches." The report further concluded that Dr. Webber "[did not] agree with [another doctor's] conclusions that Mr. Colton is employable." Petitioner was 33 years of age at the time of the accident and was employed by Cipher-Data Products, Inc. (Cipher-Data). Petitioner had worked for Cipher-Data for 4-1/2 years as a research and development materials manager earning a base salary of $ 28,080 at the time of the accident. In addition to his base salary, petitioner was covered under Cipher-Data's accident and health insurance plan (the Plan). Cipher-Data contributed 63.9 percent of the Plan premiums while 36.1 percent of the premiums were *277 deducted from petitioner's gross pay. The Plan provided for long-term disability income insurance. Section 8-1 and 8-2 of the employer's handbook regarding the Plan's long-term disability benefits stated: if you become totally disabled, this Plan will pay you an income equivalent to 66-2/3% of your base salary, subject to a maximum benefit of $ 4,000 per month, less any amounts for which you may also be eligible under (a) any other employer-sponsored disability plan; (b) Workers' Compensation or Occupational Disease Laws; (c) any state disability benefits law; (d) Social Security (including any portion attributable to dependents); and (e) any disability or retirement benefits, if actually received, under the Company's Pension Plan if any. * * * The benefit is computed on base salary at commencement of disability. * * * * * * A benefit period commences on the 91st consecutive day of [petitioner's] total disability and can continue, depending on [petitioner's] age at commencement of disability, * * * to age 65 or normal retirement, whichever occurs first. During 1990, petitioner received $ 18,720 in long-term disability payments from Cipher-Data pursuant to the Plan. [3] Petitioner *278 had no other income for 1990. Petitioner testified he received a Form W-2 from Cipher-Data. At that time, petitioner consulted a Certified Public Accountant (C.P.A.) who advised petitioner that a tax return need not be filed because the disability benefits were fully exempt from tax. Petitioner testified that based on the advice from the C.P.A. he did not file a 1990 Federal return. In 1992, upon respondent's request petitioner filed a 1990 Federal return and reported the disability benefits as excluded from gross income. Petitioner contends that his disability benefit payments are excludable from his gross income because: (1) They constitute payments from the permanent loss of a function of the body to perform normal functions of sitting, walking or lifting, and (2) the payments were computed with reference to the nature of the injury without regard to the period petitioner was absent from work. Respondent *279 contends that 63.1 percent of the disability benefit payments are included in petitioner's gross income because that amount represents the portion of disability benefit payments received on account of Cipher-Data's premium contributions. The first issue for decision is whether 63.1 percent of petitioner's disability benefit payments, which represent that portion of the premium contributions made by Cipher-Data, are excluded from gross income. Under section 105(a), gross income includes "amounts received by an employee through accident or health insurance for personal injuries or sickness * * * to the extent such amounts * * * are attributable to contributions by the employer which were not includible in the gross income of the employee." Benefits received from premiums paid partially by the employer and partially by contributions of the employee are subject to the provisions of section 105(a) to the extent that they are attributable to contributions of the employer which were not includible in the employee's gross income. Sec. 1.105-1(a), Income Tax Regs.
Section 105(c) provides an exception to section 105(a). Section 105(c) states: (c) Payments Unrelated to Absence From Work. *280 -- Gross income does not include amounts referred to in subsection (a) to the extent such amounts -- (1) constitute payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement, of the taxpayer * * * and
(2) are computed with reference to the nature of the injury without regard to the period the employee is absent from work. [Emphasis added.] Section 105(c) requires that two separate tests be satisfied. Beisler v. Commissioner, 814 F.2d 1304 (9th Cir. 1987) (en banc), affg. T.C. Memo. 1985-25. Particularly, section 105(c)(2) requires that benefits vary according to the type and severity of a person's injury. Id. at 1308. Petitioner bears the burden of proving that respondent's determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). In the present case, the Plan provides that petitioner's disability benefits will be based on 66-2/3 percent of petitioner's base salary at the time of the accident. The payments in issue are not based upon the type and severity of the *281 injury as required by section 105(c)(2). The amount of petitioner's disability payments under the Plan would not have varied depending upon the nature of petitioner's injury. The exclusion under section 105(c) is therefore not applicable to petitioner's disability benefit payments. Since we find that petitioner has not satisfied the requirements of section 105(c)(2), we need not consider whether the benefits "constitute payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement." Sec. 105(c)(1). Accordingly, respondent's determination on this issue is sustained. The next issue for decision is whether petitioner is liable for an addition to tax under section 6651(a) for failure to file a timely return. Section 6651(a)(1) imposes an addition to tax for failure to timely file a return. The addition to tax equals 5 percent of the tax required to be shown on the return for the first month, with an additional 5 percent for each additional month or fraction of a month during which the failure to file continues, not to exceed a maximum of 25 percent. Sec. 6651(a)(1). The addition to tax under section 6651(a) will be imposed unless *282 the taxpayer establishes: (1) The failure did not result from "willful neglect"; and (2) the failure was "due to reasonable cause". "Willful neglect" has been interpreted to mean a conscious, intentional failure, or reckless indifference. United States v. Boyle, 469 U.S. 241, 245-246 (1985). "Reasonable cause" requires the taxpayer to demonstrate that he exercised ordinary business care and prudence. Petitioner testified that when he received the Form W-2 he went to a C.P.A. who advised petitioner that he did not have to file a 1990 Federal return because the disability benefits were excluded. We find petitioner's testimony credible. When a C.P.A. advises a taxpayer on a matter of law it is reasonable for the taxpayer to rely on that advice. Id. Petitioner has demonstrated to the Court that he exercised ordinary business care and prudence in his decision not to file a 1990 Federal return. Accordingly, we find that petitioner's failure to file a timely return was due to reasonable cause and the addition to tax under section 6651(a) will not be imposed. To reflect the foregoing, Decision will be entered under Rule 155 as to the deficiency *283 in tax and for petitioner as to the addition to tax under section 6651(a) for 1990. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent conceded that 36.1 percent of petitioner's disability benefit payments are excluded from petitioner's gross income pursuant to section 105(a).↩
3. The amount received by petitioner represented 66-2/3 percent of his base salary at the time of his accident.↩