T.C. Memo. 2003-184


UNITED STATES TAX COURT


STEPHEN HAYDEN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10441-01.                    Filed June 24, 2003.


<u>Saul A. Bernick</u> and <u>Neal J. Shapiro</u>, for petitioner.

<u>Helen H. Keuning</u>, for respondent.



MEMORANDUM OPINION


JACOBS, <u>Judge</u>: Respondent determined deficiencies in petitioner's Federal income tax and additions to tax under section 6651(a)(1)[1] for 1997 and 1998 as follows:

_____

[1] All section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

|       |            | Addition to Tax |
|-------|------------|-----------------|
| Year  | Deficiency | Sec. 6651(a)(1) |
| 1997  | $102,731   | $25,683         |
| 1998  | $ 26,347   | $6,587          |

After concessions by the parties,[2] the issue remaining for decision is whether disability benefits received by petitioner in 1997 and 1998 from UNUM Life Insurance Co. of America (UNUM) are excludable from his gross income pursuant to section 105(c). For reasons set forth herein, we hold they are not.

## Background

The parties submitted this case fully stipulated, without trial, pursuant to Rule 122. The facts stipulated by the parties are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

When the petition in this case was filed, petitioner resided in Carson City, Nevada. From 1991-94, petitioner was employed as the chief executive officer of Calera Recognition Systems (Calera).[3]

In August 1991, Calera contracted for a group long-term disability insurance policy through UNUM (the UNUM policy) for the benefit of its employees. Under the UNUM policy, UNUM agreed to

---

[2] Respondent concedes that petitioner is not liable for the addition to tax under sec. 6651(a)(1). Petitioner concedes that he failed to report properly a $14,677 State tax refund for 1995 as income on his 1997 Federal tax return.

[3] Calera ceased conducting business sometime in 2000.

pay a monthly benefit provided it received proof that the insured employee was disabled. As relevant in this case, under the UNUM policy, the terms "disability" and "disabled" meant that, because of injury or sickness: (1) The insured could not perform any of the material duties of his regular occupation; or (2) while able to perform at least one but not all of the material duties of his regular occupation on a part-time or full-time basis, the insured was earning not more than 80 percent of his indexed predisability earnings.

Under the UNUM policy, if an insured employee provided proof of continued disability and regular attendance of a physician, UNUM agreed to pay the monthly benefit for the period of disability following a 90-day elimination period. The monthly benefit could neither exceed the insured employee's amount of insurance nor be paid for a period longer than the maximum benefit period. The amount of insurance was 66-2/3 percent of the insured employee's basic monthly earnings, not to exceed the maximum monthly benefit, less other income benefits. The maximum monthly benefit was $10,000; the minimum monthly benefit was the greater of $100 or 10 percent of the monthly benefit before deductions for other income benefits. If an insured employee earned more than 20 percent of his pre-disability monthly earnings in his regular occupation or another occupation, then the monthly benefit was to be reduced (but not below the minimum benefit) by the excess of the monthly benefit

plus the insured employee's earnings over his/her pre-disability earnings.

The maximum benefit period was determined by the insured employee's age at disability, as follows:

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than 60 | To age 65 |
| 60 | 60 mos. |
| 61 | 48 mos. |
| 62 | 42 mos. |
| 63 | 36 mos. |
| 64 | 30 mos. |
| 65 | 24 mos. |
| 66 | 21 mos. |
| 67 | 18 mos. |
| 68 | 15 mos. |
| 69 and over | 12 mos. |

If a disability was caused by mental illness, alcoholism, or drug abuse, the benefit period generally could not exceed 24 months.[4]

Calera paid the premium under the UNUM policy. Petitioner was not required to pay any portion of the premium or to make contributions in order to be covered under the UNUM policy. Petitioner was not required to include (and did not include) any portion of the premium payment in his gross income.

In December 1994, petitioner suffered a severe neurological impairment that prevented him from engaging in any gainful

[4] If an insured employee continued to be disabled and became confined in a hospital or institution after the 24-month period and for at least 14 consecutive days, the monthly benefit was payable during the confinement.

employment. On January 12, 1995, petitioner filed a claim with UNUM for monthly disability benefits.

Initially UNUM refused to pay petitioner's disability claim for lack of medical documentation establishing that petitioner suffered a loss of function. Petitioner filed an administrative appeal. UNUM eventually reversed its initial decision and approved petitioner's disability claim.

On June 19, 1997, UNUM paid petitioner a lump sum of $237,885.69 for benefits owed from March 21, 1995 to June 18, 1997. In addition to the lump-sum payment, on July 20, 1997, petitioner began receiving monthly disability payments of $9,333.33. Petitioner received benefits totaling $286,931.22 in 1997 and $115,597.08 in 1998.

On his 1997 and 1998 Federal tax returns, petitioner reported the $286,931 (rounded) received from UNUM in 1997 and the $115,597 (rounded) received in 1998 as non-taxable sick pay. Petitioner filed both his 1997 and 1998 tax returns in December 1999.

Although UNUM paid petitioner the disability payments in 1997 and 1998, petitioner disputed the amount of the monthly benefit he was entitled to receive. While UNUM paid petitioner $9,333.33 per month in 1997 and 1998, petitioner demanded monthly benefits of $10,000. Petitioner filed suit against UNUM in State court on September 17, 1998. Petitioner and UNUM settled their dispute, and the suit was dismissed on November 15, 2000. The State court

settlement had no effect on the amount petitioner had received from UNUM in 1997 or 1998.

## Discussion

Gross income includes all income from whatever source derived. Sec. 61. Generally, amounts received through accident or health insurance for personal injuries or sickness are excluded from gross income under section 104(a)(3), unless the amounts are either (1) attributable to contributions by the employer that were not includable in the gross income of the employee or (2) paid by the employer. If amounts received by an employee through accident or health insurance for personal injuries or sickness are either (1) attributable to contributions by the employer that were not includable in the gross income of the employee or (2) paid by the employer, then the amounts are specifically included in the employee's gross income under section 105(a).

Four conditions must be met for section 105(a) to apply. See Kees v. Commissioner, T.C. Memo. 1999-41. First, the amounts must be received through accident or health insurance; second, the amounts must be for personal injuries or sickness; third, the amounts must be attributable to contributions made by the employer; and fourth, the employer's contributions must not have been includable in the employee's gross income.

In the instant case, petitioner received $286,931.22 in 1997 and $115,597.08 in 1998 from UNUM under the UNUM policy, an

accident or health insurance plan. Petitioner received the benefits for a disability caused by a severe neurological impairment, a personal injury or illness, that he suffered beginning in December 1994. The benefits were attributable to contributions made by Calera, petitioner's employer, and the contributions were not included in petitioner's gross income. Thus, in the situation involved herein, all four conditions of section 105(a) have been met.

Section 105(c), however, excludes from gross income amounts described in 105(a) if (1) the amounts constitute payment for permanent loss, or loss of use, of a member or function of the body, or the permanent disfigurement, of the taxpayer employee, and (2) the payments are computed with reference to the nature of the injury and without regard to the period the taxpayer employee is absent from work.

The legislative history of section 105(c)(2) illustrates the distinct character of both the nature-of-the-injury and the absence-from-work requirements of the statute. S. Rept. 1622, 83d Cong., 2d Sess. 183-184 (1954), provides the following example to illustrate the kind of payments excludable from gross income under section 105(c):

> Assume that under the plan of an employer payments equal to 25 percent of annual compensation are made to employees for loss of a leg. The $10,000 employee would therefore receive a payment of $2,500 and the $4,000 employee would receive a payment of $1,000. These amounts would be excludible from gross income if, under

the plan, they are payable regardless of the period that the employee is absent from work.

In Beisler v. Commissioner, 814 F.2d 1304, 1308 (9th Cir. 1987), affg. T.C. Memo. 1985-25, the U.S. Court of Appeals for the Ninth Circuit, to which an appeal of a decision in this case would lie, described the exception provided in section 105(c) and its purpose as follows:

> Section 105(c) * * * [excludes] from gross income certain payments under accident and health plans that do not resemble income, while including those that do. Section 105(c)(2) is a mechanism for accomplishing this purpose. It excludes from gross income only those amounts of accident and health insurance payments that are computed with reference to the nature of the taxpayer's injury. Only these payments are compensation for "the permanent loss or loss of use of a member or function of the body, or permanent disfigurement," and as such do not resemble income. On the other hand, section 105(c)(2) includes in income amounts that vary according to the amount of time an employee is absent from work. These amounts resemble income in that they tend to compensate a person for lost wages.
>
> To accomplish the congressional purpose of excluding only those payments that compensate for permanent losses of bodily function, the nature-of-the-injury requirement is best read to require that benefits vary according to the type and severity of a person's injury. Only then are the payments and the injury sufficiently related to reflect the compensatory purpose required by section 105(c). * * *

Thus, "amounts received as accident or health insurance benefits may be excluded from gross income under section 105(c) only if paid by a plan that varies the amount of payment according to the type and severity of the injury suffered by the employee." Id. Benefits are not excludable under section 105(c) if the plan does

not compute the amount of its payments with reference to the nature of the injury.  Id.

To exclude from income amounts described in section 105(a), section 105(c) first requires that the taxpayer prove that the amount received is payment for "the permanent loss or loss of use of a member or function of the body, or permanent disfigurement, of the taxpayer".  Sec. 105(c)(1); see also Watts v. United States, 703 F.2d 346, 350-53 (9th Cir. 1983).  Next, the taxpayer must show that the amount received is "computed with reference to the nature of the injury without regard to the period the employee is absent from work."  Sec. 105(c)(2).

The parties agree that the payments petitioner received from UNUM in 1997 and 1998 constitute payments for his permanent loss or use of a member or function of his body within the meaning of section 105(c)(1).  The parties disagree as to whether the payments were computed with reference to the nature of the injury without regard to the period petitioner was absent from work as required by section 105(c)(2).

In the case before us, UNUM agreed to pay the monthly benefit for the period of disability following a 90-day elimination period. The UNUM policy provided that petitioner's monthly disability benefit would be based on 66-2/3 percent of petitioner's salary at the time of the disability up to the maximum $10,000, regardless of the nature of the injury or illness.  Although the amount of the

monthly benefit could not exceed the maximum benefit or be less than the minimum benefit, the amount of the monthly benefit was not affected by the severity or nature of the illness or injury that caused the employee's disability.

Payments from a disability plan do not qualify for the section 105(c)(2) exclusion if the payments are the same regardless of the nature and severity of the particular injuries causing the disabilities. Hines v. Commissioner, 72 T.C. 715 (1979). Under the UNUM policy, an employee who was disabled because he had lost a leg was entitled to the same benefits as one who was disabled because he had lost both legs, another limb, or his sight, suffered kidney failure, or had a heart attack or a stroke. Such payments are not based upon the type and severity of the injury as required by section 105(c)(2). Colton v. Commissioner, T.C. Memo. 1995-275.

Petitioner contends that the benefits were computed by reference to the nature of the injury because the UNUM policy distinguished between physical injury or illness and mental illness. We disagree.

The monthly benefit for a total disability caused by mental illness did not differ from the monthly benefit for a total disability caused by physical injury. The benefit period (and thus the total benefit) for a disability caused by mental illness could be shorter than the benefit period for a disability caused by a physical illness or injury, only if the employee was under age 65

when he/she became disabled and did not return to work within 24 months. We do not believe that such payments are based upon the type and severity of the injury as required by section 105(c)(2).

Furthermore, here, petitioner's total disability benefit was not calculated simply by virtue of his sustaining an injury. Rather, it was contingent upon his absence from his job. Payments that are designed to replace the income an employee has lost due to disability, rather than to compensate for the injury itself, cannot be said to be computed without regard to the length of time the employee was absent from work. Beisler v. Commissioner, supra at 1308; Armstrong v. Commissioner, T.C. Memo. 1993-579.

Section 105(c)(2) requires that the amount of the benefit be calculated with reference to the nature of the particular injury and that the amount not vary according to whether the injured taxpayer retired immediately after the injury, returned to work after some recuperation period, or returned to work immediately. See S. Rept. 1622, 83d Cong., 2d Sess. 183-184 (1954) (accompanying H.R. 8300, which was enacted as Internal Revenue Code of 1954, ch. 736, 68A Stat. 1); sec. 1.105-3, Income Tax Regs. In the case at hand, the monthly benefit to a totally disabled employee under the UNUM policy spans a period beginning 90 days after he first becomes unable to work and ending when he is able to work. Had petitioner been out of work for a period sufficient to collect a monthly benefit and then returned to full duties, he still would have been

paid under the terms of the UNUM policy for the period of his absence. It is difficult to conceive how the monthly benefit could be more closely tailored to an employee's period of absence from work. Armstrong v. Commissioner, T.C. Memo. 1993-579, supra.

Payments under the UNUM policy are designed to replace the income an employee lost due to disability and are computed with regard to the employee's absence from work. The UNUM policy plainly did not compute the amount of payments "with reference to the nature of the injury," nor did it award benefits "without regard to the period the employee [was] absent from work." We conclude, therefore, that the benefits are not excluded from income under section 105(c).

We have considered various arguments made by petitioner not discussed above and have not found them persuasive

To reflect the foregoing and the parties' concessions,

> Decision will be entered for respondent with respect to the deficiencies and for petitioner with respect to the additions to tax under section 6651(a).