T.C. Summary Opinion 2007-110

UNITED STATES TAX COURT

MILLARD D. AND MARJORIE C. THOMAS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 22366-04S, 11333-05S.    Filed June 28, 2007.

Millard D. and Marjorie C. Thomas, pro se.

<u>Daniel N. Price</u>, for respondent.

WHERRY, <u>Judge</u>:  These consolidated cases arise from
petitions for judicial review of notices of deficiency.  They
were heard pursuant to the provisions of section 7463 of the
Internal Revenue Code in effect when the petitions were filed.[1]

---

[1]Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for the years in issue, and all
Rule references are to the Tax Court Rules of Practice and
Procedure.

Pursuant to section 7463(b), the decisions to be entered are not reviewable by any other court, and this opinion shall not be treated as precedent for any other case. The issue for decision is whether disability pension benefits are excludable from petitioners' gross income pursuant to section 105(c) for taxable years 2002 and 2003.

## Background

Some of the facts have been stipulated by the parties. The stipulations, with accompanying exhibits, are incorporated herein by this reference. At the time the petition for docket No. 22366-04S was filed, petitioners resided in Santa Fe, New Mexico. By the time the petition for docket No. 11333-05S was filed, petitioners resided in El Paso, Texas.

Petitioner, Millard Thomas (Mr. Thomas), was employed by Stone Container Corp. (Stone Container) and its predecessors from 1970 to 1995. In 1995, Mr. Thomas applied for disability pension benefits from Pace Industry Union-Management Pension Fund (PIUMPF).[2] These benefits were granted in 1996. Mr. Thomas's disability consists of lower back pain caused by degenerative disk disease, and leg pain caused by chronic varicose veins. His leg disability was apparently the result of a work-related injury

---

[2]Some exhibits refer to the "Paper Industry Union-Management Pension Fund" rather than to "Pace". "Pace" is an acronym for "Paper, Allied Industries, Chemical and Energy Workers' Union International," and the two titles apparently refer to one and the same pension plan or pension fund.

that became a chronic condition.  Photographs provided by petitioners confirm that Mr. Thomas's injured leg is severely disfigured.

Pace Industry Union-Management Pension Plan (PIUMPP), Article IV, Section 11, ELIGIBILITY FOR DISABILITY PENSION, provides:

> (a) **Eligibility.**  A Participant shall be entitled to retire on a Disability Pension if he meets all of the following conditions:
>
> (i) He becomes totally and permanently disabled as defined in Section (b) below while working in Covered Employment,[3] and
>
> (ii) For Program A, B, and C Covered Employees, he has accumulated at least 10 years of Pension Credit with at least 2 quarters of Future Service Credit at the time the total and permanent disability commences.
>
> (iii) For Program D, E, and F Covered Employees, he has accumulated at least 5 years of Pension Credit with at least 2 quarters of Future Service Credit at the time the total and permanent disability commences.

Mr. Thomas was a Program A Covered Employee.  PIUMPP Article IV, Section 12, AMOUNT AND COMMENCEMENT OF DISABILITY BENEFIT, provides:

---

[3]PIUMPP sec. (b) provides in pertinent part:

> **Definition Of Total and Permanent Disability.**  A Participant shall be deemed totally and permanently disabled if, on the basis of medical evidence satisfactory to the Trustees, he is found to be totally and permanently unable, as a result of bodily injury or disease, to perform work in a position within the collective bargaining unit of the Employer with which he was last employed and to which he is contractually entitled.  * * *

(a) **Amount.** The monthly amount of the Disability Pension shall be the amount of Regular Pension to which the Participant would be entitled if he had attained his Normal Retirement Age at the time his Disability Pensions starts, based on -

(i) the number of full and fractional years of Pension Credit accrued by him on the last day for which the Employer was obligated to make contributions to the Fund on behalf of such Participant, and

(ii) the Benefit Level in effect on the last day for which the Employer was obligated to make contributions to the Fund on behalf of such Participant.[4]

A document entitled PIUMPF - CALCULATIONS, dated May 16, 1996, provided that Mr. Thomas was almost 52 years old when he retired, and that he worked for Stone Container and its predecessors for 25.75 years. The document shows an "Age Reduction %" of "60.0% on 52 Years 0 Months". According to the document, Mr. Thomas's "Benefit Level" was "$483 under Plan Type 'A'". The document estimates Mr. Thomas's disability pension benefits to total $498 per month.

---

[4]The PIUMPF Summary Plan Description, Section X, further provides under the heading FINANCIAL INFORMATION that "The contributions to the Plan are made by the employers in accordance with their collective bargaining agreements with the PACE International Union, AFL-CIO, and other unions, and are reflected in the Fund's Standard Form of Participation Agreements." The record does not reflect that Mr. Thomas paid premiums for the disability pension plan or that premiums paid by Stone Container were includable in Mr. Thomas's gross income. Accordingly, Mr. Thomas's disability pension benefits are not excludable from gross income pursuant to sec. 72(b) or 104(a)(3). See sec. 72(f); sec. 1.72-15(c)(2), Income Tax Regs.

Mr. Thomas's Notice of Pension Award, dated May 22, 1996, provided that Mr. Thomas was entitled to a monthly benefit level of $483, and was awarded a monthly disability pension of $498, retroactive to March 1, 1996, which was the "Effective Date".

Petitioners have never included Mr. Thomas's disability pension in their gross income. In 1999, respondent examined Mr. Thomas's Federal income tax return and accepted his position that his disability pension benefits were nontaxable.[5] In both 2002 and 2003, Mr. Thomas received $5,976 in disability pension benefits, which respondent now contends are includable in petitioners' gross income.

---

[5]In Megibow v. Commissioner, T.C. Memo. 2004-41, affd. 161 Fed. Appx. 98 (2d Cir. 2005), this Court observed:

> From a legal standpoint, income taxes are levied on an annual basis, such that each year represents a new liability and a separate cause of action. Commissioner v. Sunnen, 333 U.S. 591, 598-600 (1948); Fla. Peach Corp. v. Commissioner, 90 T.C. [678] 682 [(1988)]. Given this principle, collateral estoppel would not operate to establish entitlement to deductions in one year based merely on an allowance of similar deductions in a different year or years. See Barmes v. Commissioner, T.C. Memo. 2001-155 (rejecting attempts to apply collateral estoppel to depreciation deductions based on a prior litigated tax year), affd. 89 AFTR 2d 2002-2249, 2002-1 USTC par. 50,312 (7th Cir. 2002); see also Adolph Coors Co. v. Commissioner, 519 F.2d 1280, 1283 (10th Cir. 1975) (rejecting an attempt to apply collateral estoppel even though the exact issue was raised in a prior Tax Court proceeding but, because the Commissioner abandoned the issue during the litigation, no judicial determination or findings were made), affg. 60 T.C. 368 (1973).

Respondent issued a notice of deficiency on November 8, 2004, for the taxable year 2002, and on May 23, 2005, for the taxable year 2003, showing deficiencies of $851 and $893, respectively. In response to each notice of deficiency, petitioners filed a petition with this Court in a timely manner. These cases were consolidated for trial and briefing, and a trial was held on February 7, 2006, in El Paso, Texas.

## Discussion

As a general rule, the Commissioner's determination of a taxpayer's liability in the notice of deficiency is presumed correct and the taxpayer bears the burden of proving that the determination is improper. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). However, pursuant to section 7491(a)(1), the burden of proof on factual issues that affect the taxpayer's tax liability may be shifted to the Commissioner where the "taxpayer introduces credible evidence with respect to * * * such issue". The burden will shift only if the taxpayer has, inter alia, complied with substantiation requirements pursuant to the Internal Revenue Code and "cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews". Sec. 7491(a)(2). Here, the parties agree on the facts. The sole issue for decision is a legal issue, and, therefore, section 7491 does not affect the result in these cases.

Section 61(a) defines gross income as "all income from whatever source derived, including * * * (11) Pensions", unless otherwise provided.  Section 105(a) provides that amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent that such amounts are (1) attributable to employer contributions that were not includable in the employee's gross income, or (2) were paid by the employer.  Section 105(c) provides an exception to the general rule in section 105(a):

> Gross income does not include amounts referred to in subsection (a) to the extent such amounts --
>
> (1) constitute payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement, of the taxpayer, his spouse, or a dependent (as defined in section 152), and
>
> (2) are computed with reference to the nature of the injury without regard to the period the employee is absent from work.

In order to qualify for the section 105(c) exception, the payments to Mr. Thomas must satisfy both of these requirements. The Court finds that the payments to Mr. Thomas fail section 105(c)(2); therefore, the Court need not, and does not, decide whether the payments to Mr. Thomas satisfy section 105(c)(1).

Section 105(c)(2) itself has two requirements that must be satisfied:  (1) The payments to the taxpayer must be computed with reference to the nature of the injury; and (2) the payments must be computed without regard to the period the taxpayer is

absent from work.  See <u>Hines v. Commissioner</u>, 72 T.C. 715, 720 (1979).  "Payments from a disability plan do not qualify for the section 105(c)(2) exclusion if the payments are the same regardless of the nature and severity of the particular injuries causing the disability."  <u>Hayden v. Commissioner</u>, T.C. Memo. 2003-184 (citing <u>Hines v. Commissioner</u>, <u>supra</u>), affd. 127 Fed. Appx. 975 (9th Cir. 2005).  The Court must conclude that the payments to Mr. Thomas fail the first requirement of section 105(c)(2) because Mr. Thomas's disability pension benefits were calculated based on his age and years of employment with Stone Container, and were unaffected by the nature and severity of his disability.

PIUMPP disability pension benefits are available only to employees that meet a minimum term of employment. The PIUMPP clearly provides that the amount of disability pension benefits an employee is entitled to receive is based on the employee's years of employment.  Mr. Thomas's Notice of Pension Award, and calculations of his benefits, show that his $498 monthly payments were based on his age at the time of his disability and his 25.75 years of employment.  Although Mr. Thomas's disability triggered his entitlement to receive disability pension benefits, the amount of his monthly benefits was determined by his age and duration of employment, not by the nature and severity of his disability.

The evidence at trial clearly shows that petitioners have admirably worked very hard, under difficult circumstances, to support themselves and their family and to pay their taxes on limited income due to Mr. Thomas's disability. However, given the clear language of the applicable statutes, the Court concludes that Mr. Thomas's disability pension benefits are taxable. Accordingly, the Court sustains the deficiencies determined by respondent for the 2002 and 2003 taxable years.

In their brief, petitioners argued that if they were ultimately found liable for the deficiencies, then interest should be abated because respondent previously agreed with them, at the time of the 1999 audit, that Mr. Thomas's disability pension benefits were nontaxable. Pursuant to section 6404(e)(1), the Commissioner may abate part or all of an assessment of interest on any deficiency or payment of income tax. Abatement may be granted to the extent that any tax deficiency or delay in payment is attributable to unreasonable erroneous or dilatory performance of a ministerial or managerial act by an officer or employee of the IRS acting in his or her official capacity.

This Court lacks jurisdiction over petitioners' abatement request. Generally, a taxpayer must first file with the Commissioner Form 843, Claim for Refund and Request for Abatement. See sec. 301.6404-1(c), Proced. & Admin. Regs. If

the taxpayer's request for abatement of interest is denied, then the taxpayer may petition this Court to review the Secretary's exercise of his discretion, whether or not to abate interest. See sec. 6404(h).

The Court has considered all of petitioners' contentions, arguments, requests, and statements.  To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>for respondent</u>.