T.C. Memo. 1999-41

UNITED STATES TAX COURT

WILLIAM T. AND KATHRYN A. KEES, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8467-95.                    Filed February 8, 1999.

William T. Kees, pro se.

<u>William Henck</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>:  Respondent determined a deficiency in the
amount of $39,612 in petitioners' 1992 Federal income tax, and an
accuracy-related penalty under section 6662(a)[1] in the amount of
$7,922.  This case was submitted to the Court fully stipulated

---

[1] Unless otherwise noted, all section references are to the
Internal Revenue Code in effect for the year in issue, and all
Rule references are to the Tax Court Rules of Practice and
Procedure.

pursuant to Rule 122. We must decide the following issues: (1) Whether petitioners are entitled to exclude disability payments from income under section 105(c) or some other provision. We hold they are not. (2) Whether petitioners are liable for the accuracy-related penalty as determined by respondent. We hold they are not.

At the time of filing the petition, petitioners resided in Oak Hill, West Virginia.

In his opening brief, William T. Kees (petitioner) offered both a substantive argument with respect to the deficiency and a request for the "exclusion" of petitioner Kathryn A. Kees (Mrs. Kees) from the instant case. Petitioner's request for the exclusion of Mrs. Kees is based on the assertion that, in finalizing their divorce, she and petitioner had agreed that he would be responsible for any tax liabilities arising from the instant case. We shall treat petitioner's request for the exclusion of Mrs. Kees as petitioners' motion to dismiss with respect to Mrs. Kees, and we shall treat the remainder of the document as petitioners' opening brief.

The notice of deficiency was issued jointly to petitioners, as they had filed a joint return for the year in issue. Petitioners jointly filed a petition and an amended petition in this Court, and Mrs. Kees has signed jointly with petitioner several subsequent filings, although not the opening brief.[2]

---

[2] Along with petitioner, Mrs. Kees signed a joint

(continued...)

Having invoked the jurisdiction of the Tax Court with respect to Mrs. Kees, petitioners may not unilaterally oust the Court from jurisdiction. Dorl v. Commissioner, 57 T.C. 720 (1972). Under section 7459(d), once a taxpayer has filed a petition in the Tax Court, dismissal for any reason other than lack of jurisdiction requires the Court to enter an order finding the deficiency to be the amount determined by the Commissioner in the notice of deficiency, unless the Commissioner reduces the amount of his claim. Estate of Ming v. Commissioner, 62 T.C. 519, 522 (1974); see also Rule 123(d). This is a result obviously not sought by petitioner; consequently, petitioners' motion to dismiss with respect to Mrs. Kees will be denied.[3]

## FINDINGS OF FACT

During the year in issue, petitioners were married and filed a joint tax return. Petitioner was employed as a human resources manager for Arch Mineral Corp. (Arch Mineral). Arch Mineral funded a long-term disability plan (the disability plan) for its employees through UNUM Insurance Co. (UNUM). Arch Mineral paid all the premiums for the disability plan, and petitioners did not include in income the value of those premiums.

---

[2](...continued) stipulation of facts, a joint motion to submit the case under Rule 122, and a letter to respondent requesting that she be dismissed from the instant case.

[3] We note, however, that petitioner Kathryn Kees is still free to seek relief under the new "innocent spouse" provision, sec. 6015, added to the Code by the Internal Revenue Service Restructuring and Reform Act of 1998, Pub L. 105-206, sec. 3201(a), 112 Stat. 734.

In January 1987, petitioner suffered a concussion when he slipped on ice in the driveway of his residence and hit his head. Petitioner missed 2 months of work after the injury. After he returned to work, he began to suffer seizures and progressively worse headaches. Approximately 18 months later, on November 1, 1988, petitioner went on long-term disability. Pursuant to the standard procedure of Arch Mineral, he was terminated from employment on November 1, 1989, after 1 year on long-term disability.

Under the disability plan an insured is totally disabled if, because of sickness or injury, he cannot perform all of the duties of his regular job, and, after benefits have been paid for 24 months, he cannot perform the duties of any job he is suited for by training, education or experience. Payments under the disability plan do not begin until the insured has been totally disabled for 26 weeks. Benefits are paid monthly, in an amount equal to 60 percent of monthly salary just before total disability begins. If the insured was injured before reaching age 60, benefits are paid up until age 65, as long as the insured remains totally disabled and requires a doctor's attendance.

Beginning May 1, 1989, petitioner received long-term disability payments from UNUM pursuant to the provisions of the disability plan. In accordance with the terms of the disability plan, petitioner received monthly disability payments equal to 60 percent of his monthly salary, or approximately $3,200.

Petitioner was 45 years old when he began to receive payments from UNUM.

In a letter dated January 8, 1990, UNUM informed petitioner that his disability payments would end May 1, 1991, because in UNUM's view, petitioner's disability was due to mental illness, and the disability plan covered mental illness for only 24 months. In a letter dated June 30, 1991, UNUM informed petitioner that its investigation of his medical condition was ongoing, and that UNUM had decided to extend payments through July 1, 1991. For the period between May 1991 and May 1992, UNUM stopped making monthly payments on several occasions and resumed those payments only after petitioner threatened legal action. In May 1992, after protracted oral negotiations, UNUM paid petitioner a lump-sum settlement of $135,000 with respect to his disability claim. UNUM issued a Form W-2, Wage and Tax Statement, to petitioner for the taxable year 1992 in the amount of $150,646, which included the lump-sum amount and other payments made by UNUM in that year. Petitioners did not include any of the Form W-2 amount in income in 1992 and did not attach the Form W-2 to their return.

On July 17, 1992, petitioner filed a request for hearing with the Social Security Administration for disability insurance benefits, and his claim was upheld in a decision by the presiding administrative law judge on March 24, 1993. The administrative law judge found that petitioner was under a "disability" within the meaning of sections 216(i) and 223 of the Social Security

Act, 42 U.S.C. secs. 416(i), 423 (1994), as a result of chronic headaches, labile hypertension, major depressive disorder, seizure disorder, and sleep apnea.

OPINION

Respondent argues that the entire amount petitioners received from UNUM in 1992, $150,646, is included in gross income under section 105(a). Petitioners argue that the lump-sum payment of $135,000 was not paid under the disability plan and that as a result the amounts received from UNUM are not taxable income to them. We agree with respondent.

Section 105(a) provides as follows:

Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts * * * are attributable to contributions by the employer which were not includible in the gross income of the employee * * *.

Section 105(a), therefore, has several conditions for its application. First, it applies to "amounts received * * * through accident or health insurance". Second, the amounts must be "for personal injuries or sickness". Third, the amounts must be "attributable to contributions by the employer". Fourth, it must be the case that the contributions "were not includible in the gross income of the employee". In the instant case, there is no question that the second, third, and fourth conditions have been met. The concussion petitioner suffered is a personal injury. Petitioner's employer, Arch Mineral, funded the

disability plan and paid all the premiums.  Petitioners did not include the premiums in income.  Thus, the application of section 105(a) turns on whether the first condition is met; i.e., whether the lump-sum payment constitutes "amounts received * * * through accident or health insurance".[4]

Petitioners argue that the $135,000 lump sum petitioner received from UNUM was not paid under the disability plan. Petitioners base their argument on the assertion that there is no provision in the disability plan authorizing UNUM to offer a lump-sum payment to an employee in lieu of future payments under the plan.  When an amount is paid in settlement, we look to the specific claims for which the settlement was paid.  See Allen v. Commissioner, T.C. Memo. 1998-406 (citing Bagley v. Commissioner, 105 T.C. 396, 406 (1995), affd. 121 F.3d 393 (8th Cir. 1997)). If the language of the settlement agreement is not clear, we look to the intent of the payor, considering all the facts and circumstances.  See Allen v. Commissioner, supra (citing Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33, and Robinson v. Commissioner, 102 T.C. 116, 127 (1994), affd. in part and revd. and remanded in part 70 F.3d 34 (5th Cir. 1995)).  The record does not contain any documents relating to the settlement or any information about the terms of

---

[4] The $150,646 that petitioner received during the year in issue comprises the lump-sum settlement of $135,000 and $15,646 in monthly benefits.  Petitioners make no argument concerning the $15,646 in monthly benefits, and there is no question that these amounts constitute "amounts received * * * through accident or health insurance".

the settlement.  Further, the record contains no direct evidence about UNUM's intent in making the lump-sum payment to petitioner. The record does contain the stipulation that "after protracted oral negotiations, UNUM paid petitioner a lump-sum settlement of $135,000 with respect to his disability claim."  Under all the facts and circumstances, we find that the nature of the claim underlying the lump-sum payment was UNUM's liability under the disability plan.  Settlement does not transform the nature of the payments into something other than "amounts received * * * through accident or health insurance" within the meaning of section 105(a).  Thus, section 105(a) applies to the lump-sum payment of $135,000 as well as to the monthly payments totaling $15,646.

The fact that section 105(a) applies does not necessarily mean that the amounts are included in income.  As section 105(a) itself indicates, there are exceptions.  The relevant exception for the instant case appears in section 105(c), which provides as follows:

> Gross income does not include amounts referred to in subsection (a) to the extent such amounts--
>
> > (1) constitute payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement, of the taxpayer * * *, and
> >
> > (2) are computed with reference to the nature of the injury without regard to the period the employee is absent from work.

In order to qualify for this exception, the payments to petitioner must satisfy both conditions.  We find that the payments fail to satisfy section 105(c)(2); therefore, we need not, and do not, decide whether they satisfy section 105(c)(1).

Section 105(c)(2) itself has two parts that must be satisfied:  The payments to the taxpayer must be computed with reference to the nature of the injury, and they must be computed without regard to the period the taxpayer is absent from work.  With respect to the first part, the Court of Appeals for the Fourth Circuit, to which an appeal in this case would lie, has stated as follows:

> A review of the cases indicates that for payments to be excludable from income under section 105(c), the instrument or agreement under which the amounts are paid must itself provide specificity as to the permanent loss or injury suffered and the corresponding amount of payments to be provided. * * * exclusion is permitted only under plans which vary benefits to reflect the particular loss of bodily function. * * *

Rosen v. United States, 829 F.2d 506, 509 (4th Cir. 1987).[5] There is nothing in the disability plan that computes payments with reference to the nature of the injury.  Indeed, regardless of the injury, a person receiving benefits for total disability under the disability plan gets a monthly payment equal to 60 percent of monthly earnings.  Thus, payments under the disability plan are not "computed with reference to the nature of the

_____

[5] It may be noted that our own precedent accords with Rosen v. United States, 829 F.2d 506 (4th Cir. 1987).  Hines v. Commissioner, 72 T.C. 715, 720 (1979).

injury", as required by section 105(c)(2), but instead are computed with reference to the recipient's earnings. Accordingly, the exception does not apply to petitioner,[6] and the payments are taxable to him under section 105(a).

Finally, we note that even if petitioners were correct that the lump-sum amount was not paid under the disability plan, they would still be required to include it in income. At most, petitioners' argument that the lump-sum payment was not made under the disability plan amounts to arguing that section 105(a) does not apply. But if section 105(a) does not apply, then the exclusion under section 105(c) does not apply, and the payments are included in income under section 61, unless specifically excluded by another section. There are no specific exclusions available to petitioner. For example, respondent notes, and we agree, that section 104(a)(2) does not apply. Section 104(a)(2) excludes from income "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness". Section 104(a)(2) applies if the underlying cause of action is based upon tort or tort type rights and the damages were received on account of personal injuries or sickness. Commissioner v. Schleier, 515 U.S. 323, 337 (1995). In the instant case, there is no evidence that petitioner had any tort or tort type claim against UNUM.

---

[6] Because the payments are computed with reference to earnings, we need not consider whether they are computed without regard to the period of absence from work.

Indeed, as we have indicated, the evidence shows that the lump-sum amount was not damages for a tort claim but settlement of a contract dispute as to how much was owed petitioner under the disability plan. Thus, section 104(a)(2) does not apply.

Accuracy-Related Penalty

Respondent determined an accuracy-related penalty under section 6662 in the amount of $7,922, based on the determination that petitioners' underpayment was attributable to a "substantial understatement of income tax" within the meaning of section 6662(d). However, the accuracy-related penalty will not be imposed with respect to any portion of an underpayment if it is shown that there was reasonable cause and that the taxpayer acted in good faith. Sec. 6664(c)(1). The determination of whether there was reasonable cause and good faith "is made on a case-by-case basis, taking into account all pertinent facts and circumstances." Sec. 1.6664-4(b)(1), Income Tax Regs. "Generally, the most important factor is the extent of the taxpayer's efforts to assess the taxpayer's proper tax liability." Id. Reasonable cause includes "an honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge and education of the taxpayer." Id.

The taxpayer's mental and physical condition, as well as sophistication with respect to the tax laws, at the time the return was filed are relevant in deciding whether the taxpayer acted with reasonable cause. Ruckman v. Commissioner, T.C. Memo. 1998-83; see also Carnahan v. Commissioner, T.C. Memo. 1994-163,

affd. without published opinion 70 F.3d 637 (D.C. Cir. 1995); Gray v. Commissioner, T.C. Memo. 1982-392.  The decision of the administrative law judge in the record herein demonstrates petitioner's medical infirmities, which existed when petitioners filed their return for the year in issue.  Petitioner's medical history as documented in his disability hearing shows that he was subject to grand mal seizures, a major depressive disorder, debilitating headaches, and other chronic pain.  Further, petitioners' opening brief and other submitted documents suggest that he does not have a sophisticated knowledge of the tax laws. In these circumstances, we believe that petitioners' failure to include the disability payments in income was due to reasonable cause under section 6664(c)(1).  Thus, the underpayment arising from the omitted income is not subject to accuracy-related penalties under section 6662(b)(2).

To reflect the foregoing,

An appropriate order will be issued, and decision will be entered for respondent with respect to the deficiency and for petitioners with respect to the accuracy-related penalty.