T.C. Summary Opinion 2005-132

UNITED STATES TAX COURT

JOHN M. AND NANCY L. JEROSE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13606-03S.          Filed September 6, 2005.

John M. and Nancy L. Jerose, pro sese.

<u>Steven M. Webster</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue.

Respondent determined a deficiency in petitioners' Federal income tax of $1,425 for the taxable year 2000.

The issue for decision is whether disability benefits received by petitioner, Nancy L. Jerose, in 2000 from the Fortis Benefits Insurance Co. are excludable from petitioners' gross income pursuant to section 105(c). For reasons set forth herein, we hold they are not.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Horse Shoe, North Carolina, on the date the petition was filed in this case.

During the period from 1991 through September 2000, Nancy L. Jerose (petitioner) was employed as a certified nursing assistant by Henderson County Hospital Corp. doing business as Margaret R. Parsee Memorial Hospital (Memorial Hospital). Memorial Hospital contracted through the Fortis Benefits Insurance Co. (Fortis Co.) for a group long-term disability insurance program (the Fortis policy) for the benefit of its employees. The Fortis policy states, in pertinent part:

**Schedule Amount**

Core Plan: The Schedule Amount is 60 percent of monthly pay subject to a Maximum Schedule Amount of $6,000 per month.

Alternate Plan:   The Schedule Amount is 60 percent of monthly pay subject to a Maximum Schedule of $6,000 per month.

**Insurance Provided**

If you [a covered person] become disabled while insured under the long term disability insurance, we will pay benefits if you satisfy the qualifying period.  We will continue to pay benefits during your disability, but not beyond the Maximum Benefit Period.  Any benefits are subject to the provisions of the policy.

**Maximum Benefit Period**

We will not pay benefits under the Core Plan beyond the maximums stated below, based on your age on the day the period of disability started.

| AGE | MAXIMUM BENEFIT PERIOD |
|---|---|
| Before 65 | 36 months of disability, following the end of the qualifying period |
| 65 but before 68 | 24 months of disability, following the end of the qualifying period |
| 68 but before 70 | 18 months of disability, following the end of the qualifying period |
| 70 but before 72 | 15 months of disability, following the end of the qualifying period |
| 72 or more | 12 months of disability, following the end of the qualifying period |

We will not pay benefits under the Alternate Plan beyond the maximums stated below, based on your age on the day the period of disability started.

| AGE | MAXIMUM BENEFIT PERIOD |
|---|---|
| Before 65 | the day before Social Security Normal Retirement Date or 36 months of disability, following the end of the qualifying period, whichever is longer |
| 65 but before 68 | 24 months of disability, following the end of the qualifying period |
| 68 but before 70 | 18 months of disability, following the end of the qualifying period |
| 70 but before 72 | 15 months of disability, following the end of the qualifying period |
| 72 or more | 12 months of disability, following the end of the qualifying period |

**Amount of Benefit**

The amount of benefit we will pay is the Schedule Amount minus the Offset Amount.  However, if the Schedule Amount plus the amount of benefits and payments from Other Sources is more than 70% of your monthly pay, your benefit will be further reduced by the excess.

**Schedule Amount**

The Schedule Amount, shown in the Schedule, is based on the Rate of Benefit and Maximum Schedule Amount determined in accordance with a plan, approved by us, which precludes individual selection.

**Offset Amount**

If you are eligible for any of the following benefits or payments, the total of all monthly benefits plus the pro-rated amount of any lump sum payments will be subtracted from the Schedule Amount

- group disability benefits from any other plan;
- disability benefits from the United States Social Security Act, including dependent benefits, payable because of your injury, sickness, or pregnancy;
- disability benefits from a government plan, except Social Security;
- any benefits (except medical or death benefits) or any amount received in a compromise settlement of your rights, under:
- any Worker's Compensation Act (or a similar law); or
- the Maritime Doctrine of Maintenance, Wages, or Cure;
- retirement benefits, disability benefits, or similar benefits (not including benefits based on your contributions) from a retirement plan sponsored by your participating employer, or
- retirement benefits from a government plan.

Early retirement benefits from a retirement plan sponsored by your participating employer or from a government plan will be included only if:
- you choose to receive them; or

> - you have not chosen to receive them but they would not reduce the normal retirement benefit under the retirement plan sponsored by your participating employer.

**Other Sources**

> If you are eligible to receive any salary, wages, partnership or proprietorship draw, commissions, or similar pay from any work you do, we will not consider such income for the 12 consecutive months starting on the day you become entitled to it, as long as the sum of:
> - the income described above,
> - the Schedule Amount, and
> - benefits from any source described in Other Sources, is not more than 100% of your monthly pay. If the sum is more than 100% of your monthly pay, we will subtract the amount over 100% from the Schedule Amount when determining your benefit under the policy.

> After 12 months, we will consider 70% of the amount determined after reducing any salary, wages, partnership or proprietorship draw, commissions or similar pay you earn from any work you do, by any family care expense, or

> Any group disability insurance contract, except one sponsored by the participating employer, or an affiliated employer.

As a result of degenerative disk disease of the spine and permanent nerve damage, petitioner ceased working at Memorial Hospital in September of 1999. Due to her illness, petitioner was prevented from engaging in any gainful employment after 1999. During taxable year 2000, petitioner received disability benefits under the Fortis policy in the amount of $9,481.

The Fortis Co. sent to petitioner and respondent a Form W-2, Wage and Tax Statement, for taxable year 2000 reflecting wages, tips, and other compensation paid to petitioner in the amount of $9,481.

Petitioners timely filed their joint Federal income tax return for taxable year 2000, on April 14, 2001.  On their Form 1040, U.S. Individual Income Tax Return, petitioners did not report the amount of $9,481 received from the Fortis Co. in their gross income.  Petitioners attached a Form 8275, Disclosure Statement, to their Form 1040.  On the Form 8275, the petitioners' tax return preparer wrote:

> W-2 issued by Fortis Insurance Co. indicates taxable income of $9,481 the taxpayer presents that the income is comprised of disability payments not subject to tax and that the W-2 was issued with the income coded incorrectly.  The taxpayer is attempting to resolve the issue with Fortis Insurance Co. at the time.

Respondent issued petitioners a notice of deficiency for taxable year 2000, in which respondent determined that petitioners had unreported income of $9,481 and that they were liable for a tax deficiency in the amount of $1,425.

## Discussion[1]

Section 61(a) defines gross income as "all income from whatever source derived," unless otherwise provided.  McClanahan v. United States, 292 F.2d 630, 631-632 (5th Cir. 1961).  The Supreme Court has consistently given this definition of gross income a liberal construction "in recognition of the intention of Congress to tax all gains except those specifically exempted."

---

[1]We decide the issue in this case without regard to the burden of proof.  Accordingly, we need not decide whether the general rule of sec. 7491(a)(1) is applicable in this case.  See Higbee v. Commissioner, 116 T.C. 438 (2001).

Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955).

Generally, gross income does not include amounts received through accident or health insurance for personal injuries or sickness, other than amounts received by an employee to the extent such amounts are: (1) Attributable to contributions by the employer which were not includable in the gross income of the employee; or (2) paid by the employer. See sec. 104(a)(3). If amounts received by an employee through accident or health insurance for personal injuries or sickness are: either (1) Attributable to contributions by the employer that were not includable in the gross income of the employee; or (2) paid by the employer, then the amounts are specifically included in the employee's gross income under section 105(a).

Four conditions must be met for section 105(a) to apply. See Kees v. Commissioner, T.C. Memo. 1999-41. First, the amounts must be received through accident or health insurance; second, the amounts must be for personal injuries or sickness; third, the amounts must be attributable to contributions made by the employer; and fourth, the employer's contributions must not have been includable in the employee's gross income.

In the instant case, petitioner received $9,481 from the Fortis Co. under the Fortis policy, a group long-term disability insurance program. Petitioner received the benefits for a disability caused by degenerative disk disease of the spine and

permanent nerve damage, a personal injury or illness that she suffered beginning in September 1999. Petitioner testified that she paid $3.50 biweekly toward the Fortis policy premiums. However, petitioner did not offer any documentary evidence to substantiate such a claim. Based on the common practices of employer-funded insurance policies, such as the Fortis policy at issue in the present case, and on the record in this case, we find that the contributions for the Fortis policy were paid by Memorial Hospital, petitioner's employer, and that the contributions from Memorial Hospital were not included in petitioner's gross income. Thus, in the present case, all four conditions of section 105(a) have been met.

The fact that section 105(a) applies does not necessarily mean that the amounts are included in income. As section 105(a) itself indicates, there are exceptions. The relevant exception for the instant case appears in section 105(c), which provides as follows:

SEC. 105(c). Payments Unrelated To Absence From Work.--

Gross income does not include amounts referred to in subsection (a) to the extent such amounts--

(1) constitute payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement, of the taxpayer * * *, and

(2) are computed with reference to the nature of the injury without regard to the period the employee is absent from work.

In order to qualify for the section 105(c) exception, the payments to petitioner must satisfy both paragraphs (1) and (2) of section 105(c).  We find that the payments fail section 105(c)(2); therefore, we need not, and do not, decide whether they satisfy section 105(c)(1).

Section 105(c)(2) itself has two parts that must be satisfied:  (1) The payments to the taxpayer must be computed with reference to the nature of the injury, and (2) the payments must be computed without regard to the period the taxpayer is absent from work.  With respect to the first part of section 105(c)(2), the Court of Appeals for the Fourth Circuit stated in Rosen v. United States, 829 F.2d 506, 509 (4th Cir. 1987):

> A review of the cases indicates that for payments to be excludible from income under section 105(c), the instrument or agreement under which the amounts are paid must itself provide specificity as to the permanent loss or injury suffered and the corresponding amount of payments to be provided.  * * * Exclusion is permitted only under plans which vary benefits to reflect the particular loss of bodily function.  * * *

Accord Beisler v. Commissioner, 814 F.2d 1304, 1307 (9th Cir. 1987), affg. T.C. Memo. 1985-25; Hines v. Commissioner, 72 T.C. 715, 720 (1979).

Further, the legislative history of section 105(c)(2) illustrates the distinct character of both the nature-of-the-injury and the absence-from-work requirements of the statute.  S. Rept. 1622, 83d Cong., 2d Sess. 183-184 (1954), provides the

following example to illustrate the kind of payments excludable from gross income under section 105(c):

> Assume that under the plan of an employer payments equal to 25 percent of annual compensation are made to employees for loss of a leg. The $10,000 employee would therefore receive a payment of $2,500 and the $4,000 employee would receive a payment of $1,000. These amounts would be excludible from gross income if, under the plan, they are payable regardless of the period that the employee is absent from work.

There is nothing in the Fortis policy that computes payments with reference to the nature of the injury. Indeed, regardless of the injury, a person receiving benefits for total disability under the Fortis policy gets a monthly payment equal to 60 percent of monthly earnings. Thus, payments under the Fortis policy are not "computed with reference to the nature of the injury", as required by section 105(c)(2), but instead are computed with reference to the recipient's earnings. Accordingly, the exception does not apply to petitioner,[2] and the payments are taxable to her under section 105(a).

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[2]Because the payments are computed with reference to earnings, we need not consider whether they are computed without regard to the period of absence from work.