T.C. Memo. 2010-254

UNITED STATES TAX COURT

THOMAS M. AND DONNA GENTILE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14226-08.            Filed November 18, 2010.


        R determined a deficiency and an accuracy-related
penalty pursuant to sec. 6662(a), I.R.C., for the 2005 tax
year.  The issues for decision are:  (1) Whether a lump-sum
settlement payment Ps received in 2005 is excludable from
their gross income pursuant to sec. 105, I.R.C.; and (2)
whether Ps are liable for the accuracy-related penalty
pursuant to sec. 6662(a), I.R.C.

        <u>Held</u>:  Ps' lump-sum settlement payment constitutes
taxable income under sec. 105(a), I.R.C., for the 2005
tax year.

        <u>Held</u>:  Ps are not liable for a penalty under sec.
6662(a), I.R.C.



<u>James G. LeBloch</u>, for petitioners.

<u>Guy H. Glaser</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  This case is before the Court on a petition for redetermination of an alleged income tax deficiency that respondent determined for petitioners' 2005 tax year.  The issues for decision are:  (1) Whether a disability lump-sum settlement payment is excludable from petitioners' gross income pursuant to section 105(c) for the 2005 tax year; and (2) whether petitioners are liable for a section 6662 accuracy-related penalty.[1]

FINDINGS OF FACT

Some of the facts have been stipulated.  The stipulations, with accompanying exhibits, are incorporated herein by this reference.  At the time the petition was filed, petitioners resided in California.

Petitioner Donna J. Gentile (Mrs. Gentile) was employed by the Orange County Register, a subsidiary of Freedom Newspapers Inc. (OC Register), from approximately 1982 to 1993.

Starting January 1, 1992, the OC Register contracted for a group long-term disability insurance policy through a company known as UNUM Life Insurance Co. of America (UNUM).  Under the UNUM disability policy, UNUM agreed to pay a monthly benefit

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

based on the insured employee's salary, provided it received proof that the insured employee was disabled.

As relevant in this case, under the UNUM disability policy the terms "disability" and "disabled" meant that, because of injury or sickness: "1. the insured cannot perform each of the material duties of his regular occupation; and 2. after benefits have been paid for 24 months, the insured cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted by training, education or experience."

If an insured employee provided proof of continued disability and regular attendance of a physician, UNUM agreed to pay a monthly benefit until a determinable date and during the period of disability. The monthly benefit was 60 percent of the insured employee's basic monthly earnings, less any other income benefits received by the insured employee. Other income benefits received included benefits such as worker's compensation. The maximum monthly benefit was $10,000, and the minimum monthly benefit was the greater of $100 per month or 10 percent of the monthly benefit before deductions for other income benefits.

The maximum benefit period was determined by the insured employee's age at disability, as follows:

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than age 60 | To age 65 but not less than 60 months |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and Over | 12 months |

The OC Register paid the entire premium under the UNUM disability policy.  Mrs. Gentile was not required to pay any portion of the premium or to include (and did not include) any portion of the premium payment in her gross income.

On or about December 2, 1992, Mrs. Gentile hurt her back while lifting bundles of newspaper at work and never again worked for the OC Register.

In October 1994 Mrs. Gentile submitted a claim to UNUM seeking long-term disability payments under the disability plan of approximately $1,300 per month.  UNUM denied the claim on the basis that it had not been furnished timely notice and proof of

the claim. Mrs. Gentile appealed the denial of her claim, but UNUM denied her appeal.

On February 14, 1996, Mrs. Gentile filed an action against UNUM in Federal District Court under the provisions of the Employee Retirement Income Security Act of 1974. In addition to seeking declaratory relief, Mrs. Gentile sought damages against UNUM for: (1) Breach of contract, and (2) reasonable attorney's fees and other costs. The District Court dismissed Mrs. Gentile's case on the grounds that her failure to give timely notice and proof of her claim barred her from recovery. However, in 1998 the District Court's ruling was reversed on appeal and the matter was remanded for further proceedings.

After protracted negotiations, in December 2005, in exchange for a lump-sum payment of $333,647.46, Mrs. Gentile executed a receipt and general release discharging UNUM (and the other defendants in the action) from all her disability claims.

UNUM sent petitioners a Form 1099-MISC, Miscellaneous Income, for the 2005 tax year to an address where petitioners no longer lived. Petitioners did not receive the Form 1099-MISC.

Petitioners engaged a tax return preparer, Lee A. Rincon, to help them file their Form 1040, U.S. Individual Income Tax Return, for the 2005 tax year. During the preparation of their Form 1040 a question was raised regarding the taxability of the lump-sum settlement payment. To determine the appropriate tax

treatment of the settlement proceeds, petitioner Thomas Gentile (Mr. Gentile) contacted the Internal Revenue Service (IRS) and the OC Register. Mr. Gentile did not disclose to this Court the employee identification number of the person he spoke with at the IRS but indicated that he had notes of the conversation and believes her name was Ms. Dawkins. Mr. Gentile spoke with Ronda Haynes at the OC Register. On the basis of information he received from the IRS and the OC Register, Mr. Gentile determined that the proceeds of the lump-sum settlement payment were not taxable. Hence, petitioners did not include any of the lump-sum settlement payment on their Form 1040 for the 2005 tax year.

On May 29, 2007, respondent sent a Notice CP2501 to petitioners inquiring why they had failed to report the UNUM lump-sum settlement payment on their Form 1040 for the 2005 tax year. On or about June 15, 2007, petitioners responded in writing to the Notice CP2501. Petitioners indicated that "The money stated on the 1099 form was from a lawsuit. We did not receive the full amount & called the IRS office to see if it was taxable & the rep said no. That's why I did not include it with my 2005 return."

On August 27, 2007, respondent sent petitioners a Notice CP2000 requesting further information concerning the lawsuit and the nature of the payment received. Petitioners did not reply to the Notice CP2000 by the September 26, 2007, deadline.

Respondent issued a notice of deficiency on March 10, 2008, determining that petitioners were liable for a deficiency of $111,624 in income tax for the 2005 tax year (plus interest) and a $22,325 accuracy-related penalty under section 6662(a) for failing to report the lump-sum settlement payment on their 2005 tax return.

In response to the notice of deficiency, petitioners filed a timely petition with this Court.

OPINION

I. Lump-Sum Settlement Payment

In general, the Commissioner's determinations in the deficiency notice are presumed correct, and the taxpayer bears the burden of proving that the Commissioner's determinations are in error.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Under certain circumstances, section 7491(a) shifts the burden of proof to the Commissioner with respect to a factual issue relevant to a taxpayer's liability.  The burden shifts to the Commissioner if the taxpayer introduces credible evidence with respect to the issue, complies with substantiation requirements, maintains all required records, and cooperates with the Commissioner's reasonable requests for witnesses, information, documents, meetings, and interviews.  Sec. 7491(a)(1) and (2).  The burden is on the taxpayer to show that he satisfied the prerequisites of section 7491(a)(2).  Polone v.

Commissioner, T.C. Memo. 2003-339, affd. 505 F.3d 966 (9th Cir. 2007); H. Conf. Rept. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995.

In their pretrial memorandum petitioners allege that section 7491(a) is applicable to this case because they "have maintained all required records * * * [and] fully cooperated with all reasonable requests made by the secretary for witnesses, information, documents, meetings and interviews".  Respondent contends that petitioners have not satisfied the prerequisites of section 7491(a)(2) because they did not maintain required tax records and did not fully cooperate with respondent's reasonable requests for information and documents concerning the UNUM payment.  On the instant record, we agree with respondent.

Before issuing the notice of deficiency respondent sent two requests to petitioners for information regarding the lump-sum settlement payment.  However, the only information petitioners provided regarding the lump-sum payment was the note they submitted in response to respondent's request for information dated May 29, 2007, in which they stated the lump-sum payment was "from a lawsuit."  Additionally, after the notice of deficiency was issued, respondent sent at least three letters (and placed telephone calls) requesting that petitioners submit "all documentation regarding the lawsuit and the settlement".  In response to respondent's first request, the only information

petitioners submitted was Mrs. Gentile's request for a jury trial.  However, on February 17, 2009, petitioners submitted the complaint Mrs. Gentile filed in District Court, although they did not include the settlement agreement.  Accordingly, we conclude that petitioners did not sufficiently comply with all of respondent's reasonable requests for information and/or did not maintain the requested records.  Therefore, petitioners bear the burden of proving that respondent's determination is wrong.  See sec. 7491(a); Rule 142(a).  However, in this case our resolution of whether petitioners are liable for the deficiency and the accuracy-related penalty does not depend on who has the burden of proof.

Section 61(a) defines gross income as "all income from whatever source derived," unless otherwise provided.  Section 105(a) provides that amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent that such amounts (1) are attributable to employer contributions that were not includable in the employee's gross income, or (2) were paid by the employer.  Section 105(c) provides an exception to the general rule in section 105(a):

SEC. 105(c).  Payments Unrelated to Absence From Work.-- Gross income does not include amounts referred to in subsection (a) to the extent such amounts--

(1) constitute payment for the permanent loss or loss of use of a member or function of the body, or the permanent

disfigurement, of the taxpayer, his spouse, or a dependent (as defined in section 152, determined without regard to subsections (b)(1), (b)(2), and (d)(1)(B) thereof), and

(2) are computed with reference to the nature of the injury without regard to the period the employee is absent from work.

In order to qualify for the section 105(c) exception, the payments to Mrs. Gentile must satisfy both of these requirements. The payments to her fail to satisfy section 105(c)(2); therefore, the Court need not, and does not, decide whether the payments to Mrs. Gentile satisfy section 105(c)(1).

Section 105(c)(2) itself has two requirements: (1) The payments to the taxpayer must be computed with reference to the nature of the injury; and (2) the payments must be computed without regard to the period the taxpayer is absent from work. See Hines v. Commissioner, 72 T.C. 715, 720 (1979); Kees v. Commissioner, T.C. Memo. 1999-41. "Payments from a disability plan do not qualify for the section 105(c)(2) exclusion if the payments are the same regardless of the nature and severity of the particular injuries causing the disabilities." Hayden v. Commissioner, T.C. Memo. 2003-184 (citing Hines v. Commissioner, supra), affd. 127 Fed. Appx. 975 (9th Cir. 2005); see also Beisler v. Commissioner, 814 F.2d 1304, 1307 (9th Cir. 1987) ("benefit payments, to be excludable from gross income under section 105(c), must be made under a plan that varies benefits

according to the type and severity of the injury incurred"), affg. T.C. Memo. 1985-25.

There is nothing in the UNUM disability policy that computes payments with reference to the nature of the injury. Indeed, regardless of the type or severity of the insured's injury, a person receiving benefits for total disability under the plan gets a monthly payment equal to 60 percent of monthly earnings subject to a specified minimum and maximum amount. However, petitioners claim that the lump-sum settlement payment Mrs. Gentile received relates to her injury because "without her injury there would not have been a settlement". They claim that the settlement payment "was arrived at by a push and shove between the parties and the carrier taking into account the extent that * * * [Mrs. Gentile] was disabled."

At trial petitioners' lawyer who represented them in their suit against UNUM, Mr. Scott, indicated that the amount of the settlement agreement was arithmetically determined and was based on the amount of the monthly benefit payable under the UNUM policy and the date that Mrs. Gentile's benefits were terminated. He stated that the computation of the settlement agreement would have included other benefits received, such as worker's compensation, and attorney's fees to the extent they are recoverable. Additionally, Mr. Scott indicated that the amount of the settlement could depend on the future cost of medical

services but that the settlement in this case did not include medical benefits.

Payments under the UNUM disability policy, even if in the form of a lump-sum settlement, are designed to replace the income an employee lost due to a disability and are computed with regard to the employee's absence from work.  Accordingly, on the basis of the record, the Court finds that the lump-sum settlement payment to Mrs. Gentile fails the requirements of section 105(c)(2) because it was computed arithmetically with reference to Mrs. Gentile's absence from work and not to the nature or severity of her injury.

At trial Mr. Gentile stated that petitioners received approximately $216,000 of the $333,647.26 lump-sum settlement payment after they paid attorney's fees, expert witnesses, and doctors.  Petitioners had also previously indicated to the IRS on June 5, 2007, that they "did not receive the full amount" of the settlement.  However, as of the trial date, petitioners had not provided sufficient evidence to substantiate the offset of such deductions against the lump-sum settlement payment.  Although the lump-sum settlement payment is includable in petitioners' 2005 taxable income, petitioners would normally be able, in effect, to offset against such income any miscellaneous itemized deductions, for fees paid to attorneys and expert witnesses, subject to the 2 percent of adjusted gross income limitation under section 67(a)

and the alternative minimum tax under section 55.  See secs. 55, 67, and 68; see also <u>Commissioner v. Banks</u>, 543 U.S. 426, 435-437 (2005).

II. <u>Accuracy-Related Penalty</u>

Respondent determined an accuracy-related penalty under section 6662(a) and (b)(2) of $22,325 on the basis that petitioners' underpayment was attributable to a "substantial understatement of income tax" within the meaning of section 6662(d).

However, the accuracy-related penalty will not be imposed with respect to any portion of the underpayment if it is shown, with regard to such portion, that there was reasonable cause and that the taxpayer acted in good faith.  Sec. 6664(c)(1).  The determination of whether there was reasonable cause and good faith "is made on a case-by-case basis, taking into account all pertinent facts and circumstances."  Sec. 1.6664-4(b)(1), Income Tax Regs.  "Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability."  <u>Id.</u>  Reasonable cause and good faith includes "an honest misunderstanding of fact or law that is reasonable in light of all the facts and circumstances, including the experience, knowledge and education of the taxpayer."  <u>Id.</u>

In deciding whether the taxpayer acted with reasonable care, the Court will consider the taxpayer's mental and physical

condition, as well as sophistication with respect to tax laws, at the time the return was filed.  Kees v. Commissioner, T.C. Memo. 1999-41; Ruckman v. Commissioner, T.C. Memo. 1998-83; see also Carnahan v. Commissioner, T.C. Memo. 1994-163, affd. without published opinion 70 F.3d 637 (D.C. Cir. 1995); Gray v. Commissioner, T.C. Memo. 1982-392.

Good faith reliance on the advice of an independent, competent professional as to the tax treatment of an item may constitute reasonable cause.  Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 98-99 (2000), affd. 299 F.3d 221 (3d Cir. 2002); Estate of Robinson v. Commissioner, T.C. Memo. 2010-168; sec. 1.6664-4(b)(1), Income Tax Regs.; see also United States v. Boyle, 469 U.S. 241, 250 (1985).  "Much like a taxpayer's reliance on an attorney or an accountant, reliance on an enrolled agent is a factor we may consider in determining the reasonableness of a taxpayer's actions".  Mortensen v. Commissioner, 440 F.3d 375, 388 (6th Cir. 2006), affg. T.C. Memo. 2004-279.

Petitioners never received the Form 1099-MISC sent by UNUM because it was sent to an address where they no longer resided. Hence, they were never put on notice by the Form 1099-MISC that the lump-sum settlement payment was includable in income for the 2005 tax year.  Though they did not receive the Form 1099-MISC, petitioners engaged a tax return preparer and took the initiative

to inquire whether they had to include the lump-sum settlement payment in income for the 2005 tax year.  Mr. Gentile gave credible testimony that he contacted both the IRS and the OC Register to inquire about the taxability of the lump-sum settlement payment and that on the basis of information he received, he determined that the payment was not includable in income.  Mr. Gentile's testimony is corroborated by petitioners' response to the Notice CP2501 dated approximately June 15, 2007, in which they state that they called the IRS to "see if * * * [the lump-sum settlement payment] was taxable & the rep said no".

The Court also recognizes that both petitioners are unsophisticated in tax matters and further, that Mrs. Gentile's physical and mental condition (in light of her use of medications) is impaired.

The facts and circumstances in this case indicate that petitioners exerted reasonable effort to assess their proper tax liability for 2005 and acted in good faith.  Therefore, we believe petitioners' failure to include the lump-sum settlement payment in income was due to reasonable cause.  See sec. 6664(c)(1).  Thus, the underpayment is not subject to accuracy-related penalties under section 6662(b)(2).

The Court has considered all of petitioners' and respondent's contentions, arguments, requests, and statements.

To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

<u>An appropriate order will be issued, and decision will be entered for respondent with regard to the deficiency and for petitioners with regard to the accuracy-related penalty</u>.